EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JUAN CANCIO RIVERA, acusado y apelante.

Núm. 7088.—*Sometido:* Junio 20, 1938. *Resuelto:* Julio 13, 1938.

*Justo A. Casablanca,* abogado del apelante; *R. A. Gómez, Fiscal,* y *Luis Janer, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

Juan Cancio Rivera fué acusado ante la Corte de Distrito de San Juan de un delito subsiguiente de asesinato, consistente en haber dado muerte con malicia premeditada a Jovito Padilla el 23 de mayo de 1937, después de haber sido convicto y sentenciado el acusado por la Corte de Distrito de Humacao por dos delitos de asesinato, el 24 de julio de 1916 y el 9 de diciembre de 1919, siendo condenado a doce años de presidio y a reclusión perpetua respectivamente, cuyas sentencias fueron firmes y estaba extinguiendo en la penitenciaría de Puerto Rico en la fecha del alegado delito.

La acusación le fué leída el 7 de septiembre de 1937. Hizo alegación de no culpable y solicitó juicio por jurado. Se señaló el juicio para el 11 de enero de 1938. Al leérsele la acusación al empezar el juicio, ratificó su alegación de ino-

cente en cuanto al delito que se le imputaba y admitió ser ciertas las condenas anteriores. Se procedió a sortear y constituir el jurado e inmediatamente después a la práctica de la prueba.

Terminada la evidencia procedió el juez a transmitir sus instrucciones al jurado. Luego de hacer referencia a la acusación y de mencionar las condenas anteriores que venía extinguiendo el acusado, dijo el juez en sus instrucciones:

"El acusado hizo alegación de no culpable en cuanto al delito imputádole; y admitió, por medio de su abogado, la verdad de la acusación en lo que se refiere a la reincidencia alegada, aunque adicionándola en el sentido de que las sentencias de 12 años de presidio y de reclusión perpetua fueron conmutadas por el Gobernador de Puerto Rico el 18 de junio de 1921 a 35 años 9 meses y 18 días. Reincidencia significa la reiteración de una misma culpa o defecto."

En el curso de sus instrucciones volvió el juez a referirse a la reincidencia en los siguientes términos:

"En cuanto a la alegación de reincidencia, o sea que el acusado fué sentenciado por la Corte de Distrito de Humacao el 24 de julio de 1916 a doce años de presidio y en 9 de diciembre de 1919 a reclusión perpetua, por asesinato en segundo y primer grado respectivamente, y cuyas sentencias fueron conmutadas a una pena de 35 años 9 meses y 18 días, siendo ése un hecho admitido por el acusado, si el jurado encuentra que él es culpable, ya sea de asesinato en primero o segundo grado o de homicidio voluntario, entonces debe rendir además otro veredicto declarando que la imputación de haber sido el acusado anteriormente convicto, es verdad."

Poco después de serle sometido el caso, el jurado rindió dos veredictos: uno declarando al acusado culpable de asesinato en segundo grado, y el otro declarando que la imputación de haber sido el acusado anteriormente convicto es verdad.

Se señaló día para dictar sentencia y en la fecha indicada la dictó la corte, condenando al acusado a reclusión perpetua con trabajos forzados por un delito subsiguiente de asesinato en segundo grado.

Contra esta sentencia se interpuso el presente recurso señalando la representación del acusado la comisión de tres errores, a saber:

"1. La corte cometió error fundamental, al entender en un proceso y por un delito que no está definido en Puerto Rico, esto es, subsiguiente de asesinato.

"2. La corte cometió error de procedimiento, al interesar por sus instrucciones dos veredictos a ser rendidos por el jurado.

"3. La corte cometió error sustancial al imponer pena de reclusión perpetua fuera del marco que fija el estatuto en delitos de asesinato en segundo grado."

■ El calificativo de "subsiguiente" antepuesto a la denominación de un delito, no varía ni altera en manera alguna los elementos constitutivos del mismo. Sólo afecta la discreción del juez sentenciador al imponerle la pena una vez que el acusado ha sido convicto. Por lo tanto, al enjuiciarse al acusado por un delito subsiguiente de asesinato, no se le juzgó de un delito distinto del asesinato definido en los artículos 199 y siguientes del Código Penal. No existe, pues, el primer error señalado por el apelante.

■ "La ley no requiere cosas inútiles" es una máxima cardinal en Derecho. Si el acusado al leérsele la acusación admitió las dos condenas anteriores por asesinato, era innecesario instruir al jurado que en caso de creer al acusado culpable del delito que se le imputaba rindiese también "otro veredicto declarando que la imputación de haber sido el acusado anteriormente convicto es verdad." Bastaba con que el jurado rindiese un veredicto de culpabilidad, bien fuera de asesinato en cualquiera de sus dos grados o de homicidio voluntario, para que el juez, al dictar su sentencia, hiciese mención de los delitos anteriores e impusiese al acusado la pena correspondiente. *Pueblo* v. *González,* 49 D.P.R. 520.

Si bien se cometió este error, su importancia no justifica la revocación de la sentencia, habida cuenta de la evidencia que tuvo ante sí el jurado y a la cual nos referiremos al considerar el tercer señalamiento de error.

■ La transcripción que ha sido elevada a este tribunal sólo contiene la acusación, el veredicto, ciertas manifestaciones escritas del juez fundamentando su sentencia, la sentencia y el escrito de apelación. No contiene la relación de la prueba ya sea por transcripción de evidencia o por exposición del caso. Pero del récord aparece que el acusado fué convicto de un delito de asesinato en segundo grado y sentenciado por la Corte de Distrito de Humacao el 24 de julio de 1916 a extinguir una condena de doce años de presidio. Que posteriormente se le concedió la libertad bajo palabra y mientras gozaba de este privilegio cometió un delito de asesinato en primer grado, siendo entonces sentenciado a la pena de reclusión perpetua. Volvió a ejercitarse a su favor la Gracia Ejecutiva, conmutándosele ambas penas por la de treinta y cinco años, nueve meses y diez y ocho días, en consideración a ciertos servicios por él prestados durante la epidemia de la peste bubónica, y cuando su condena hubiera quedado extinguida el 17 de agosto de 1946, de no haber ocurrido algo anormal, reincide por tercera vez al cometer el delito que ahora nos ocupa, privando de la vida a su compañero de presidio Jovito Padilla.

Las circunstancias que rodearon este tercer delito las describe así el juez sentenciador en sus "Manifestaciones de la Corte al Pronunciar la Sentencia":

"La evidencia también ha demostrado que en esta ocasión en que usted ha delinquido, cometiendo su tercer delito de sangre, lo ha hecho dentro de las limitaciones de los muros de la penitenciaría insular, habiendo sido la víctima un recluso, compañero suyo en desgracia, y que el instrumento usado para cometer este delito fué audazmente preparado dentro del mismo penal. Tiene forma de punzón y está hecho del asa de un balde o cubo de zinc, de los propios para cargar agua. Dicha asa que es curva en su forma primitiva, fué convenientemente enderezada, terminando una de sus extremidades en punta (forma de figa) y la otra con una agarradera o mango de madera.

"Qué mente ideó y quién preparó este instrumento en forma tan adecuada y conveniente para producir grave daño corporal y hasta

la muerte, como en este caso, dentro del mismo penal, donde por virtud del reglamento imperante todos los reclusos permanecen desarmados, son detalles que no nos explica la prueba, pero hay un hecho explicado por la evidencia que habla sobre este extremo con elocuencia magistral y es que en la tarde de la muerte desgraciada de Jovito Padilla ese instrumento se hallaba en poder del acusado.

"Ahora, ¿con qué propósito se fabricó este instrumento? ¿Qué fin premeditado iba a dársele por su fabricante?

"Eso sí que lo explican elocuentemente, con lujosos detalles, todas las circunstancias del caso apreciadas en conjunto y más que nada la forma única y absoluta del arma, y si esto no fuera bastante, entonces quedémosnos con las propias palabras del acusado cuando al ser recriminado por Miguel Sierra, testigo de cargo, inmediatamente después de la agresión, diciéndole: '¡Cancio, usted ha matado este hombre!', contestó brevemente: 'Eso era lo que yo quería.'

"Se ha demostrado por la evidencia que el interfecto, Jovito Padilla, recibió dos heridas punzantes, una en el tercer espacio intercostal del lado izquierdo y otra en el cuarto espacio intercostal del lado derecho. La herida 'del pulmón izquierdo con una hemorragia grande en todo el lado izquierdo fué la que causó la muerte.' (De la declaración del Dr. Kodesh.)

"Las dos veces que el acusado figó al interfecto, dirigió su agresión a sitio primordial del cuerpo, la caja torácica, donde está alojado el más noble de todos los órganos, el corazón.

"Otro detalle coincidente a este punto lo revela la evidencia cuando explica que momentos antes del instante en que perdió la vida el interfecto Jovito Padilla, éste y el acusado habían tenido un encuentro personal, cuerpo a cuerpo, iniciándose la agresión de parte del acusado, sin que en este primer encuentro hiciera uso de arma alguna en contra del interfecto. Momento después hubo otra segunda lucha. También fué el acusado el primer agresor en el segundo pugilato y en esta ocasión mientras luchaba cuerpo a cuerpo con su adversario no sacó el arma homicida sino hasta que llegó el momento cumbre de la tragedia en que el interfecto resbaló por humedad del piso, yéndose al suelo. Fué ése el momento escogido por usted para sacar de sus ropas el instrumento con el cual ocasionó la muerte, momento en que el desequilibrio de su adversario le aseguraba a usted la oportunidad de poder sacar y usar el arma sin peligro alguno para usted."

La evidencia no ofrecía duda alguna de que el acusado fué el autor de la muerte de Jovito Padilla. Tampoco hubiera esto justificado al jurado en declarar que el acusado había

actuado en defensa propia, pues el interfecto estaba desarmado y precisamente después de resbalar y caer éste al suelo, cuando se hallaba indefenso, fué que el acusado lo agredió dos veces con el punzón. En ningún momento existió peligro real ni aparente que justificase la muerte. Además, fué el acusado el iniciador de la riña.

Descartada la legítima defensa y no existiendo controversia en cuanto al hecho de que el acusado dió muerte al interfecto, sólo quedaban al jurado dos alternativas: declararlo culpable de asesinato en cualquiera de sus dos grados o de homicidio voluntario. Asumiendo que el jurado hubiese traído un veredicto de homicidio voluntario, aún así no se habría excedido la corte al imponer la pena que impuso, pues como el delito de homicidio voluntario se castiga con pena máxima de diez años de presidio, hubiera podido imponérsele reclusión perpetua aplicando el artículo 56 del Código Penal que, en lo pertinente, dice así:

"El reo que habiendo sido convicto de algún delito castigado con pena de presidio, cometiere cualquier delito, después de dicha convicción, tal reo será castigado por el subsiguiente delito según se especifica a continuación:

"1. Si el subsiguiente delito aparejare, en primera convicción, pena de presidio por un término de más de cinco años, dicho reo será castigado con pena de presidio por un término mínimo de diez años."

"2. . . . . . . . . . .

"3. . . . . . . . . . . ."

El precepto transcrito altera la penalidad del delito de tal forma que lo hace castigable con pena mínima de diez años, y como el artículo 56, supra, no especifica pena máxima en su primer inciso anteriormente transcrito, no excluye una condena de reclusión perpetua, condena, que dadas las circunstancias especiales de este caso y la historia penal del acusado, no hubiéramos estado justificados en alterar interviniendo de ese modo con la discreción que la ley concede al juez sentenciador.

En el caso de *El Pueblo* v. *González,* 49 D.P.R. 520, 521, en que se trataba de un delito subsiguiente de homicidio voluntario y en el que, desde luego, no existían las circunstancias agravantes que concurrieron en el que nos ocupa, este tribunal, por su Juez Presidente Sr. Del Toro, se expresó en los siguientes términos:

"La transcripción sólo contiene la acusación, el veredicto, la sentencia y el escrito de apelación. No hay base, por tanto, para considerar y decidir las cuestiones que plantea el apelante en relación con la actitud del Fiscal. En cuanto a la pena, si bien es cierto que el máximo de la fijada por la ley para castigar el delito de homicidio es el de diez años de presidio, también lo es que el artículo 56 del Código Penal dispone que el reo que habiendo sido convicto de un delito castigado con pena de presidio, cometiere cualquier delito, después de dicha convicción, tal reo, si el delito subsiguiente aparejare, en primera convicción, pena de presidio por un término de más de cinco años, será castigado con pena de presidio por un término mínimo de diez años. Y como aquí González había sido convicto de un delito de homicidio castigado con pena de presidio cuando perpetró el otro delito de homicidio que apareja en primera convicción pena de presidio por un término de más de cinco años, la pena que correspondía imponerle era la mínima de diez años. La corte le impuso doce y actuó así dentro de las facultades conferídales por la ley."

Tampoco cometió la corte el tercer error que le imputa el apelante.

*Procede, por lo expuesto, desestimar el recurso y confirmar la sentencia apelada.*