EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* PEDRO CABRERA MERCADO, acusado y apelante.

Núm. 8800.—*Sometido:* Junio 24, 1941. *Resuelto:* Julio 10, 1941.

*Gonzalo Sifre* y *Antonio J. Matta,* abogados del apelante; *Hon. Procurador General Interino, Emilio de Aldrey,* y *R. A. Gómez, Fiscal del Tribunal Supremo,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR TRAVIESO emitió la opinión del tribunal.

El acusado conducía como maquinista una locomotora de la Central Carmen. Al cruzar la carretera por un paso a nivel, desprovisto de barreras y guardián, la máquina chocó con un automóvil-*truck,* ocasionando la muerte del individuo Esteban Otero Sánchez, quien viajaba en dicho vehículo. El fiscal formuló denuncia contra Cabrera por infracción del artículo 328 del Código Penal, alegando que el accidente había sido causado por su imprudencia temeraria y descuido al conducir dicha máquina.

Visto el caso ante un jurado, rindió éste un veredicto de culpabilidad. Y habiendo sido denegada la moción de nuevo juicio, el acusado fué condenado a la pena de dos años de presidio. Contra la orden denegatoria de un nuevo juicio y contra la sentencia se ha interpuesto el presente recurso.

El primer error que se imputa a la corte sentenciadora es el de haber resuelto que el veredicto no es contrario a la prueba y a derecho. Examinemos, pues, la prueba.

El primer testigo de El Pueblo, Isabelo Boria Santana, declaró: el día de autos guiaba un truck cargado de arena, por la carretera que conduce del Dorado al barrio Higuillar. En el kilómetro 3, hectómetro 3, hay un paso a nivel y allí hay montes a lado y lado y malezas que impiden ver la máquina; cuando se viene a ver está cruzando la carretera. Al pasar, al cruzar la línea, pasó el tren de golpe. Iba a bastante velocidad. Cuando vino a ver la máquina ya estaba encima. No tocó campana ni pito. No se dió cuenta de que venía la máquina, porque no podía verla. El truck iba a 15 ó 20 millas, por la derecha. La máquina lo destruyó, se lo llevó enredado. A Otero lo mató instantáneamente, encontrándose muerto debajo del vagón. Repreguntado por la defensa, contestó: que tiene 15 años de experiencia como chófer y puede juzgar la velocidad a que va un vehículo; que la máquina iba como a 35 kilómetros y llevaba siete vagones vacíos; que en el asiento delantero del truck iban una señora y una señorita que él no conocía, quienes le pidieron por favor que las llevase hasta el sitio donde él llevaba la arena; que no iba hablando con ellas porque no las conocía; que en el sitio donde está el cruce hay una pequeña pendiente; que el letrero que hay antes del cruce casi no se ve porque está obstruído por el monte.

Luis Rodríguez Valdejully, declaró: es comerciante. Esa mañana iba subiendo la pendiente en su automóvil y oyó que tocaron un *klaxon*. Al llegar a la recta divisó la parte trasera de un truck, antes de llegar a la curva. Cuando llegó a la curva, como a 50 metros, vió cuando la máquina arrastró al truck. Antes del paso a nivel hay una recta, después de esa recta hay una curva visible hacia la izquierda, cuando se llega a esa pequeña recta, 40 ó 50 metros más o menos, hay un paso a nivel y hay un cerro hacia la derecha que im-

pide ver la locomotora; y en esa época había también un monte de palos de guayabo, que también impedían ver la' máquina que venía por la vía. Antes del choque no sintió nada, no sintió pito, nada más que el klaxon del truck. El truck, que iba como a 15 ó 20 kilómetros, cargado de arena, no pudo evitar el accidente. Si el truck no guiña hacia la izquierda cuando él iba a pasarle, él hubiera sido la víctima, porque hubiese pasado, pues no oyó ruido de máquina ni nada. La locomotora remolcó al truck como cinco o diez metros del paso a nivel. En la fecha del accidente no había ningún letrero en el paso a nivel; ahora sí lo hay. Hace más de veinte años que está viajando por esa carretera.

Félix Báez Santiago, declaró: que yendo como a 15 pies más o menos del paso a nivel, iba un truck detrás de él tocando klaxon. Hay un monte que impide ver la máquina cuando viene de la central, como venía esa mañana. Más adelante todo es maleza. La máquina venía ligero, porque venía bajando una pendiente. No sintió pito ni nada. El conductor del truck trató de evitar el choque y por eso fué que no los mató a todos. La máquina no se ve hasta que se llega al paso a nivel. Después del accidente un peón de la central taló de lado y lado.

Ramón Torres Nazario, declaró: presenció el accidente, viniendo cerca del paso a nivel. Vió que venía el truck tocando klaxon. Al llegar al paso a nivel venía la máquina a bastante velocidad. Cuando el chófer del truck vió la· máquina, trató de evitar el accidente, virando hacia la izquierda. El monte impedía que el chófer viera la máquina y que el maquinista viese al chófer antes de llegar al paso a nivel. No sintió ni pito ni campana. Vió a Otero muerto debajo de uno de los carros que traía la máquina. No se fijó si había allí un letrero. Ahora sí lo hay.

Trinidad Aguayo, dijo: iba delante en el truck. No conoce al que lo guiaba. En el paso a nivel lo chocó la máquina. Antes del choque no sintió bocina de la máquina ni

campana, ni ruido. A ambos lados del paso a nivel había un monte que impedía ver la máquina. En la parte delantera del truck iba también otra señora. Todos iban callados.

Pedro Maymí, declaró: al ocurrir el accidente iba por la carretera como a 14 ó 15 pies del paso a nivel. A ambos lados hay monte que impide ver la máquina venir de Vega Alta para Dorado. No sintió pito ni campana antes del choque, ni ruido de la máquina. Vió cuando el truck giró y la máquina lo enganchó por el lado, resultando muerto Otero. La máquina venía a bastante velocidad. Desde hace tres o cuatro años había allí letreros de aviso.

La prueba testifical del acusado fué la siguiente:

Cecilio Pantoja, guardafrenos en el tren que causó el accidente, declaró: iba parado en el último vagón. Cuando iban llegando al paso a nivel el maquinista tocó el pito, y más adelante, como a 50 yardas antes de entrar al paso a nivel volvió a tocar el pito. También tocó campana. Vió el truck a poca distancia. No pudieron verlo antes porque estaba un monte por el medio que lo impide. El que va en el tren viene a ver lo que pasa cuando está ya en el paso a nivel. El que va en el truck no puede ver la locomotora. Vieron el truck cuando ya era inminente el choque. El tren venía bajando, pues hay una pendiente.

Juan López, el fogonero de la locomotora, dijo: venía en la máquina con cuatro vagones a distancia de 100 metros tocando pito y campana y cuando venía chocó la máquina con el truck. Sintió el choque y no vió nada más. Como a 10 metros del paso a nivel la máquina volvió a tocar pito y campana. Cuando viene una locomotora a cruzar el paso a nivel, los carros que van por la carretera no se ven porque hay un monte que lo impide.

Ramón Claudio, dijo: estaba trabajando en el monte, haciendo barrenos para sacar piedra. Sintió que la máquina tocó un pito largo y dos cortos antes de llegar al paso a nivel. No vió el accidente.

Gabriel Santana, declaró: se encontraba cerca de la vía. Oyó un pito largo y dos cortos y como a los tres segundos oyó un golpe de algo que había pasado. No vió el accidente.

Declaró el acusado, y dijo: que hace más de veinte años trabajaba en máquinas y que éste es el primer accidente que ha tenido; que en el sitio del accidente hay una pequeña pendiente; que conocía bien ese sitio, pues siempre trabajaba en esa ruta; que ese día tocó pito para evitar cualquier accidente; que en ese sitio se le ocurre tocar con más puntualidad, por ser invisible; que allí se viene a alcanzar a ver cualquier vehículo cuando ya se está entrando al paso a nivel; que trató de hacer todo lo que pudo, pero el tren no pudo aguantar y chocó con el carro; que trató de parar por completo y no pudo; que tiró de los frenos como para parar y evitar el choque, cuando estaba como a diez o doce metros del paso a nivel; que alcanzó a ver el truck cuando estaba entrando al paso a nivel y entonces fué que tiró de los frenos.

De la prueba, apreciada en conjunto, surge un conflicto en cuanto al hecho esencialísimo de si el acusado tocó o dejó de tocar el pito y la campana de la locomotora antes de cruzar la carretera por el paso a nivel. El jurado, a quien incumbía resolverlo, lo resolvió en contra del acusado, dando crédito a los testigos del Pueblo, quienes sostuvieron, tanto los que viajaban en el truck como los que iban a pie por la carretera, que antes del accidente no se oyó señal alguna de alarma. Resuelto así el conflicto, el veredicto de culpabilidad debía ser dictado como consecuencia natural y lógica de esa falta por parte del acusado. Este estaba familiarizado con la máquina que conducía, con la vía y con el paso a nivel; sabía que en dicho paso a nivel no había ni barreras ni guardián para proteger a los que viajaban por la carretera; sabía que la vía estaba en una pendiente antes de llegar al cruce; y sabía que los que iban por la carretera no podían ver el tren por impedírselo el monte y la maleza. Cruzar una carretera en esas condiciones, sin dar aviso alguno, a los que

viajaban por ella, es sin duda alguna una imprudencia crasa y temeraria y un descuido inexcusable, penable de acuerdo con las disposiciones del artículo 328 del Código Penal.

El caso de *El Pueblo* v. *Rodríguez,* 47 D.P.R. 600, en el que basa su argumentación el apelante, presenta hechos y circunstancias distintos a los del de autos. En el caso de Rodríguez la defensa solicitó y el fiscal presentó un pliego de especificaciones, en el cual no se alegó que el acusado dejara de tocar el pito y se le imputó exclusivamente, como constitutivo de negligencia, el hecho de no haber reducido la velocidad. Se revocó la sentencia, porque "esta precaución (la de reducir la velocidad) no siempre constituye un deber cuando el tren se acerca a un cruce en un campo abierto, a menos que las circunstancias así lo requieran''; y, además, porque no habiendo visto los testigos la locomotora antes del choque, no podían apreciar si el acusado redujo o no la velocidad. En el caso de autos se alegó específicamente que la negligencia consistió en no tocar pito ni campana.

Siendo la prueba creída por el jurado suficiente, a nuestro juicio, para justificar el veredicto, es nuestro deber sostenerlo.

██ En el segundo señalamiento se alega que la corte inferior erró al resolver que las nuevas pruebas ofrecidas por el acusado no justificaban la concesión de un nuevo juicio.

La moción de nuevo juicio se basó en el alegado descubrimiento de nuevas pruebas, consistentes en la declaración de Eugenio Báez, quien fué lesionado en el mismo accidente, y en la de Celestino López.

Eugenio Báez, en su declaración anexa a la moción, dice en substancia: que el día del accidente, él y Serafín·Pizarro viajaban en el truck, en el que trabajaban como peones; que como a cinco o seis metros antes de llegar al paso a nivel vieron la máquina que venía en ese momento como a veinte metros del paso a nivel; que entonces Pizarro empezó a golpear sobre la capota para avisarle al chófer que la máquina

venía; que el chófer siguió andando hasta que ocurrió el choque; que no puede decir si la máquina pitó o tocó campana, porque el truck no tenía silenciador y hacía mucho ruido; que como ocho o diez minutos después de ocurrido el choque, llegó allí un señor—el testigo Valdejully—en una guagüita.

La declaración de Celestino López, quien admite que no presenció el accidente, tiende a corroborar a los testigos de la defensa cuando dice que "oí cuando la máquina del tren pitaba," y a impugnar el testimonio de Valdejully, cuando dice que éste no llegó al sitio del accidente hasta siete u ocho minutos después de haberse recogido al herido Eugenio Báez.

Opinamos que la corte inferior no erró al denegar la moción de nuevo juicio. Además de ser acumulativas y de haber sido ofrecidas con el evidente propósito de impugnar la declaración de Valdejully, testigo principal del fiscal, las declaraciones ofrecidas no serían suficientes, a nuestro juicio, para alterar el resultado del juicio y justificar un veredicto distinto al rendido por el jurado. Asumiendo que sea cierto que el peón Pizarro dió golpes en la capota del truck para avisar al chófer de que el tren venía, ese hecho por sí solo carece de importancia, por no estar acompañado de evidencia demostrativa de que el chófer oyó y se dió cuenta del aviso de Pizarro y por negligencia no le prestó atención. La declaración de Eugenio Báez, al efecto de que él y Pizarro, como a cinco o seis metros antes de llegar al paso a nivel, vieron la máquina que venía como a veinte metros del paso a nivel, está abiertamente en pugna con toda la evidencia y especialmente con la declaración del propio acusado, quien al referirse al paso a nivel, dijo: "Allí no se ve; allí viene a alcanzar a ver cualquier vehículo o cualquier peligro ya que está cerca, entrando al paso a nivel." Es significativo, además, que no se haya ofrecido como nueva prueba la declaración de Pizarro, que fué, según alega Báez, quien dió el aviso al chófer.

En el tercer señalamiento se alega que la corte inferior erró al tomar conocimiento de una declaración anterior de Eugenio Báez.  Veamos lo ocurrido.

De la resolución denegatoria del nuevo juicio aparece que Eugenio Báez declaró como testigo ante la corte inferior en un pleito civil seguido por el dueño del truck contra la Central Carmen y la compañía aseguradora, para recobrar daños y perjuicios por la destrucción del truck; que los hechos en dicho caso eran los mismos que los del proceso criminal contra el maquinista; y que la declaración prestada por Báez en apoyo de la moción de nuevo juicio está en pugna con la que prestara en el mencionado pleito civil, la cual corroboraba la prueba de cargo en el caso criminal.

¿Erró la corte inferior al negarse a dar crédito a la nueva declaración de Báez, por el conocimiento que tenía de algo distinto que el mismo Báez había declarado en otra ocasión ante la misma corte?  A nuestro juicio no cometió error alguno.  Una moción de nuevo juicio, basada en el descubrimiento de nuevas pruebas, va dirigida a la sana discreción del tribunal.  Para poder hacer buen uso de esa discreción, la corte puede y debe tomar conocimiento de cualquier hecho o circunstancia que pueda afectar la credibilidad de los testigos cuyas declaraciones se ofrecen en apoyo de la moción. No vemos que se viole derecho alguno del acusado al rehusar darle crédito a la declaración de un testigo que en otra ocasión, con relación a los mismos hechos y ante la misma corte, declaró en forma distinta y en contradicción a la declaración que se ofrece como prueba posteriormente descubierta.  La regla general sentada en *Aponte y Sobrino* v. *Sucesión Pérez,* 48 D.P.R. 449, invocada por el apelante, no es de aplicación al caso de autos.  La consideraríamos aplicable si Eugenio Báez hubiese declarado en el juicio y la corte *sua sponte* hubiese traído a conocimiento del jurado la declaración prestada en el caso civil de daños y perjuicios.

■■■ Los tres primeros señalamientos en el alegato contra la sentencia recurrida se basan en la alegada conducta impropia del fiscal en su informe al jurado.

Lo único que encontramos en el récord del caso aparece en la certificación de la transcripción de la evidencia por el juez sentenciador. Dice así:

"Mientras el fiscal trataba en su informe sobre la no existencia de barreras y cadenas en el sitio del paso a nivel, la defensa llamó la atención de la corte, oponiéndose a que el fiscal continuara argumentando sobre ese particular; y entonces la corte expresó que en las instrucciones que serían transmitidas al jurado le instruiría sobre ese particular, ya que el acusado no tiene responsabilidad alguna por la falta de barreras o cadenas en el paso a nivel de referencia, y que sobre eso la responsabilidad corresponde a terceras personas y no al acusado."

El apelante no nos ha puesto en condiciones de conocer cuáles fueron, más o menos exactamente, las frases vertidas por el fiscal con referencia a la ausencia de barreras o cadenas en el paso a nivel. De la evidencia, considerada en conjunto, se desprende que no las había y que la única protección que se ofrecía a los que viajaban por la carretera fué la colocación de letreros que decían "Párese, mire y oiga." Si el fiscal se refirió a la ausencia de barreras y cadenas y al conocimiento que de ello tenía el acusado, en nada faltó a su deber, pues el conocimiento de que en el paso a nivel que iba a cruzar no existían ni barreras ni cadenas imponía al acusado una mayor obligación de ejercer un cuidado extraordinario y de usar el pito y la campana para dar aviso a los que viajaban por la carretera. No estamos autorizados para asumir—y el apelante no hace imputación alguna a ese efecto—que el fiscal trató de hacer responsable al acusado por la ausencia de barreras y cadenas. Si el fiscal hubiese cometido ese error, el acusado, que estaba asistido de letrado, pudo haber solicitado la disolución del jurado (*mistrial*). El hecho de que no se hiciera tal solicitud nos hace presumir

que el fiscal no cometió el error que se le imputa. De todos modos, la corte protegió debidamente los derechos del acusado al dar al jurado la siguiente instrucción:

"Y la corte instruye al jurado previamente, que la no existencia de barreras o guardián en el paso a nivel, como alega la acusación, no es materia de negligencia imputable al acusado, y no debe considerarla."

*La sentencia debe ser confirmada.*