EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* RAMÓN
BELTRÁN GÓMEZ, acusado y apelante.

Núm. 15186.—*Sometido:* Mayo 6, 1952. *Resuelto:* Mayo 29, 1952.

*César Andréu Ribas,* abogado del apelante; *Hon. Procurador General Víctor Gutiérrez Franqui, J. Rivera Barreras, Fiscal del Tribunal Supremo,* y *Frank Vizcarrondo Vivas, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

Acusado, convicto y sentenciado por el delito de violación, (1) Ramón Beltrán Gómez apeló y en apoyo de su recurso señala nueve motivos por los cuales, a su juicio, debe revocarse la sentencia.

El primero de ellos es que el tribunal inferior erró al declarar sin lugar su impugnación al *panel* general de jurados, así como al permitir que al desinsacularse los que iban a actuar en el juicio no estuvieran los 24 nombres del panel regular, para de entre ellos sortear y escoger 12, según lo dispone la ley. Al discutir este error el apelante alega, además, que se repitieron innecesariamente los nombres de un gran por ciento de jurados que ya habían actuado como tales el año anterior, y que violando lo preceptuado por la ley los comisionados de Río Piedras y San Juan entregaron al secretario listas conteniendo los nombres de 66 y 163 personas, respectivamente. Se desprende de los autos que al comenzarse el juicio,

---

(1) En la acusación se imputó a Beltrán Gómez el delito de violación en grado subsiguiente, por habérsele sentenciado previamente, según se alegaba, por el de asesinato en segundo grado a sufrir 20 años de presidio. Convicto en el caso de violación en la forma alegada, el tribunal de distrito le sentenció a sufrir de 10 a 35 años de presidio. Empero, por haberse anulado posteriormente la sentencia dictada en el de asesinato, dicho tribunal, luego de declarar sin lugar una moción de nuevo juicio presentádale, procedió nuevamente a dictar sentencia en el caso de violación y le impuso de 1 a 10 años de presidio.

y antes de constituirse el jurado que iba a conocer del caso, el acusado impugnó el panel general de jurados por los motivos ya expuestos. Ése era, desde luego, el momento apropiado para suscitar semejante objeción. Artículo 213, Código de Enjuiciamiento Criminal.([2]) La corte declaró sin lugar la impugnación que se hacía. Al así actuar procedió correctamente.([3]) Aunque de acuerdo con el artículo 194 del mismo Código "cada comisionado hará una lista provisional de cien nombres de personas de su respectivo municipio, que estén capacitadas para actuar como jurados en el distrito judicial"([4]) tal disposición de ley es directiva más bien que imperativa. Artículo 461 del Código de Enjuiciamiento Criminal.([5]) *Pueblo* v. *Morales,* 66 D.P.R. 10; *Pueblo* v. *Lanausse,*

---

([2]) El artículo 213 del Código de Enjuiciamiento Criminal dice así:

"La recusación de todo el jurado ha de hacerse antes de que a ningún miembro del mismo se le tome el juramento de su cargo, y podrá presentarse por escrito, o consignarla en autos el Secretario, y exponiéndose en ella clara y distintamente, los hechos que constituyen los fundamentos de la recusación."

([3]) El artículo 212 del Código de Enjuiciamiento Criminal dispone:

"Sólo puede fundarse la recusación de todo el jurado en que los procedimientos se hayan desviado *considerablemente* de las prácticas prescritas para el sorteo y formación de la lista de jurados, o en que se haya omitido citar intencionalmente a uno o más de los jurados sorteados." (Bastardillas nuestras.)

([4]) El artículo 194 del Código de Enjuiciamiento Criminal provee:

"Dichos comisionados prepararán entonces una lista general definitiva de trescientos jurados para el distrito judicial, la cual firmarán y certificarán, ajustándose a lo siguiente: Cada comisionado hará una lista provisional de cien nombres de personas de su respectivo municipio, que estén capacitadas para actuar como jurados en el distrito judicial, para lo cual tomarán como base la lista de contribuyentes del expresado municipio, que le será suministrada por el Tesorero de Puerto Rico. Los comisionados entonces determinarán hasta donde sea posible, el número proporcional que de los trescientos jurados corresponda a cada municipio, tomando como base para ello, su población, según el último censo de los Estados Unidos, y el número así determinado, se extraerá a la suerte por uno de los comisionados, en presencia de los demás, de entre los cien nombres en la lista provisional del respectivo municipio."

([5]) El artículo 461, supra, reza así:

"Ni el hecho de separarse de la forma prescrita por este Código para cualquiera alegación o procedimiento, ni el de que éste adolezca de algún error o equivocación, bastará para invalidarlo, a menos que real y efectivamente haya perjudicado al acusado o tienda a perjudicarle, en cuanto a algún derecho sustancial."

30 D.P.R. 732, 735; *Pueblo* v. *Juliá,* 25 D.P.R. 258, 260; *Pueblo* v. *Pillot,* 20 D.P.R. 376, 378; 92 A.L.R. 1110; 15 Cal. Jur., pág. 412, sec. 84; *People* v. *Davis,* 73 Cal. 355, 15 P. 8; *People* v. *Sowell,* 145 Cal. 292, 78 P. 717; *People* v. *Danford,* 112 P. 474; *People* v. *Durrant,* 48 P. 75; *People* v. *Richards,* 82 P. 691; *Wadsworth* v. *State,* 130 P. 808. Las leyes deben recibir una interpretación sensata. El artículo 194, supra, fué enmendado para que se leyera en la forma citada en el año 1918. Desde entonces no ha sufrido variación alguna. Sin embargo, la población de algunos de nuestros pueblos y ciudades ha variado tanto que resulta a veces imposible cumplir estrictamente las disposiciones de ese artículo al proveer el mismo que "los comisionados entonces determinarán hasta donde sea posible, el número proporcional que de los trescientos jurados corresponda a cada municipio, tomando como base para ello, su población, según el último censo de los Estados Unidos." Podemos tomar conocimiento judicial de que dada la población actual de la capital, comparada con el número total de habitantes dentro de la sección de San Juan del distrito judicial de Puerto Rico, a ese municipio le corresponde proporcionalmente un número mayor de 100 jurados. Siendo ello así no es posible seguir al pie de la letra el estatuto. La ley no tiene por miras cosas imposibles, mas siempre que se pueda debe darse cumplimiento estricto al estatuto en lo que a la organización y constitución del jurado concierne. Lo que a este respecto se desea es que el acusado sea juzgado por un jurado imparcial, compuesto por ciudadanos capacitados de su distrito. En el caso de autos no se demostró que la irregularidad cometida perjudicó los derechos sustanciales del acusado.

■ Por otra parte, de conformidad con el artículo 199 del mismo cuerpo legal citado, cuando los asuntos criminales pendientes ante el tribunal de distrito así lo requieran el tribunal puede dictar una orden disponiendo que se designe por sorteo

un jurado para que conozca de dichas causas "no debiendo este número exceder de veinte y cuatro". En este caso el panel general convocado se componía de veinticuatro y el hecho de que solamente veintiuno de ellos comparecieran no constituye error. *Pueblo* v. *Vázquez*, 20 D.P.R. 361, 364; *Pueblo* v. *Morales*, 14 D.P.R. 234, 238; *Pueblo* v. *Acosta*, 11 D.P.R. 249.

■■■ Al ser llamado a declarar, el secretario del tribunal manifestó que veintiuno de los jurados que aparecen en el panel general del año 1950–51 habían servido en el jurado el año anterior. A este respecto el artículo 197 del referido código provee "que al formarse nueva lista, *no se repetirá hasta donde sea posible,* ningún nombre de los jurados regulares del año anterior, a menos que sea agotada la lista de contribuyentes capacitados del distrito." (Bastardillas nuestras.) Éste es otro precepto directivo de la ley, cuya violación tampoco debe dar lugar a la revocación a no ser que se demuestre que tal desviación se hizo aviesamente y con el propósito de perjudicar al acusado o fraudulentamente. *Pueblo* v. *Carbonell*, 34 D.P.R. 479. De nada de esto hay prueba en este caso.

■ En relación con el error así señalado diremos, asimismo, que el hecho de que uno de los miembros del jurado figurara como procedente del pueblo de Río Grande cuando lo cierto era que durante los últimos tres años había residido en Río Piedras, tampoco es fundamento para impugnar todo el panel.

■ Mientras exponía su teoría al jurado, el fiscal manifestó que se proponía probar que en la tarde del 15 de septiembre de 1949 la perjudicada Áurea Esther Ruiz, conocida también por Áurea Esther Reyes, y su amiga Carmen Rodríguez, más o menos de su edad, fueron a visitar a Petra Eneida Sánchez, esposa del acusado, y luego de llegar a la Marina, de San Juan, donde éste vivía, tocaron a su puerta y él vino y la

abrió; que Beltrán les dijo que Eneida estaba en su cuarto leyendo, y que podían entrar; que no era cierto que Eneida estuviera allí; que las jóvenes entraron y el acusado cerró la puerta, así como una ventana y acto seguido cogió por los brazos a Esther, quien para esa fecha tenía 14 años y meses, la tiró sobre la cama donde él se acostaba a tener contacto con su mujer, y usando fuerza y violencia tuvo contacto carnal con ella en presencia de la otra; y que después de eso el acusado se levantó de la cama, fué hacia la otra niña, la besó, le tocó los pechos y rozó su miembro viril sobre la falda que tenía esa niña. Manifestó además, "que las dos niñas le pidieron a él que las dejara salir y él no las dejó salir y que antes de abandonar esa casa el acusado les entregó de su bolsillo 85 centavos a Esther, la de 14 años y la que tuvo contacto carnal con ella y 50 centavos a la otra jovencita que en presencia de sus ojos había visto toda esa cadena que acabo de explicarles a ustedes. Si el ministerio fiscal logra probar estos hechos, que este señor, en la forma que les acabo de plantear, cometió ese delito con una niña de 14 años y que no tuvo reparos de hacer ese delito en presencia de otra menor, y que no conforme con eso, besó, acarició e incitó los deseos carnales de esa otra menor, entonces, señores del jurado, el ministerio fiscal les dirá a ustedes que declaren culpable a este acusado de un delito de violación."

Cuando el fiscal terminó de exponer su teoría al jurado la defensa solicitó del tribunal que instruyera a éste que el acusado no venía a responder de ningún delito que no fuera el de violación en la persona de Áurea Esther. La corte contestó que no creía que fuera necesario dar semejante instrucción en aquel momento. Continuó el juicio y si bien durante el curso del mismo la prueba tendió a demostrar que luego de tener contacto carnal con Áurea Esther, el acusado había realizado con la menor Carmen Rodríguez los actos a que hizo mención el ministerio público, sin embargo, se desprendía claramente

que al acusado sólo se le procesaba por el delito de violación supuestamente cometido en la persona de Áurea Esther y no por ningún otro. Al exponer su teoría, el fiscal podía hacer referencia a cualquier hecho que de acuerdo con las reglas de evidencia fuera inseparable del hecho imputado al acusado. *Pueblo* v. *Pierantoni,* 60 D.P.R. 13; *Pueblo* v. *Juarbe,* 37 D.P.R. 463.

Por otra parte, la propia defensa contrainterrogó extensamente a la menor Carmen Rodríguez en relación no sólo con lo que ella decía haber visto que el acusado le hizo a Áurea Esther, sino también en relación con lo que esa testigo decía el acusado le había hecho a ella misma. Al así proceder, la defensa renunciaba a su derecho a solicitar que tal cuestión no fuera al jurado. *Pueblo* v. *Castro,* 72 D.P.R. 96, 100.

A petición del fiscal se admitió en evidencia el acta de nacimiento de la supuesta perjudicada. Se señala esto como error, alegándose que no se trataba de una causa por el delito de violación técnica en la cual la edad de la víctima fuera esencial. Convenimos en que se trata de un delito de violación clásico, en relación con el cual la edad de la perjudicada carece de toda relevancia. Sin embargo, al ofrecer dicha acta el fiscal hizo constar que no la ofrecía con el propósito de probar la edad, y luego la propia corte en sus instrucciones al jurado indicó que una operación aritmética demostraba que al tener lugar los actos imputados al acusado la perjudicada tenía catorce años y medio y que "en este caso no está envuelta la cuestión de la edad que es una de las modalidades como se puede realizar el delito de violación, cuando es en la persona de una niña menor de 14 años, . . . . . en este caso no tiene que ver la edad sino para determinar cualquier otra cuestión relativa a la forma de la oposición de resistencia, pero nunca para determinar que el acusado viene obligado a responder de un delito de tener actos carnales con esa niña de esa edad, porque la edad no tiene absolutamente nada que ver con esto." Bajo las circunstancias, no vemos cómo pudo perjudicar al acusado el hecho de admitirse en evidencia la refe-

rida acta de nacimiento, ni el hecho de que al admitirla el tribunal se expresara en la forma en que lo hizo.

 Al finalizar sus instrucciones al jurado el juez dijo a éste que le entregaba "una copia de la acusación, que por condición especial de las circunstancias voy a mostrar al compañero para que la coteje con la acusación a los fines de si está correcta eliminando determinada alegación que no está ahora ante ustedes." La alegación a que el juez se refería era sin duda la de grado subsiguiente, ya que en la acusación se decía que el acusado "fué sentenciado por la Hon. Corte de Distrito de San Juan, en 8–25–35 por un delito de Asesinato en Segundo Grado a la pena de 20 años de Presidio cuya sentencia es firme, por no haber sido revocada, ni anulada ni dejada sin efecto y que cumplió el referido Ramón Beltrán Gómez en el Presidio Insular de Puerto Rico." Cuando se hace contra un acusado la alegación de reincidencia o cuando se le imputa un delito subsiguiente y el caso se ve ante jurado, éste está en el deber de hacer constar en su veredicto si encuentra al acusado culpable o no del delito imputádole, como reincidente o en grado subsiguiente. Artículo 285, Código de Enjuiciamiento Criminal; (⁶) *Pueblo* v. *Cancio*, 53 D.P.R. 547; *Pueblo* v. *Almodóvar*, 61 D.P.R. 685. Pero como en el presente caso el acusado había admitido la alegación de subsiguiente era innecesario que tal cuestión se sometiera al jurado. En su consecuencia, no teniendo el jurado que pasar sobre la misma, al entregarle el juez copia de la acusación lo procedente era eliminar de ésta la alegación relativa al delito anterior, ya que de lo contrario podía confundirse al jurado.

---

(⁶) El artículo 285, supra, se lee así:

"Siempre que el hecho de haber sido anteriormente convicto de otro delito estuviere consignado en alguna acusación, y el jurado declarare en su veredicto ser culpable el reo del delito de que se le acusa, deberá declarar también, si fué o no convicto anteriormente conforme a la acusación, a menos que el mismo reo lo hubiera confesado. El veredicto del jurado en el caso de una acusación de haber sido el reo anteriormente convicto, podrá formularse así: 'Declaramos que la imputación de haber sido anteriormente convicto, es verdad' o 'Declaramos que la imputación de haber sido anteriormente convicto, no es verdad,' según el caso."

518

Hemos leído la transcripción de evidencia y creemos que la imputación de pasión, prejuicio y parcialidad no encuentra apoyo en los autos.

■ La concesión de una inspección ocular descansa enteramente en la sana discreción del juez sentenciador. *Pueblo* v. *Cruz*, 60 D.P.R. 116, 122; *Pueblo* v. *Coto*, 48 D.P.R. 147, 152; *Pueblo* v. *Sarria*, 57 D.P.R. 882.

■ Conforme ya hemos dicho, el acusado fué declarado convicto del delito imputádole y, en armonía con la acusación originalmente presentada en su contra, en la cual se alegaba el delito de violación en grado subsiguiente, el tribunal le sentenció a sufrir de 10 a 35 años de presidio. Con posterioridad a ello y a virtud de un recurso de hábeas corpus se anuló la sentencia en el caso de asesinato en segundo grado que sirvió de base a la alegación para el delito de violación en grado. subsiguiente. Anulada así esa sentencia, el acusado presentó una moción solicitando nuevo juicio. Alegó en ella, entre otras cosas, "que después del juicio, y por voz de la propia Áurea Esther Ruiz, el acusado vino en conocimiento de que dicha joven, contrario a lo que había declarado en el juicio, no está desflorada, ni tampoco fué examinada por el Dr. Arsenio Comas, sino por una enfermera subalterna de dicho médico, y que el testimonio dado por la supuesta perjudicada se lo inspiró la entonces esposa del acusado llamada Petra Eneida. Sánchez y la madre de ésta; y que Áurea Esther Ruiz compareció ante varios doctores en medicina, entre éstos dos especialistas y luego de someterse a examen resultó virgen, o sea, con su himen completo sin seña alguna de desfloración, y que dichos exámenes se hicieron pocos días después de la celebración del juicio en el cual fué convicto el acusado." La moción de nuevo juicio así presentada se basaba en el inciso 7 del artículo 303 del Código de Enjuiciamiento Criminal.(7)

---

(7) El artículo 303 del Código de Enjuiciamiento Criminal provee:
"Cuando se hubiere dictado veredicto contra el acusado, el tribunal podrá, al solicitarlo éste, conceder la celebración de nuevo juicio, pero sólo en los casos siguientes:
".

Una moción de nuevo juicio de esta naturaleza requiere no sólo que la prueba recientemente descubierta no sea acumulativa y no impugne la aducida durante el juicio, sino también que sea prueba que no se pudo descubrir con razonable diligencia antes del juicio. *Pueblo* v. *Ortiz*, 68 D.P.R. 681; *Pueblo* v. *Morales*, 66 D.P.R. 10, 20; *Pueblo* v. *Quiles*, 41 D.P.R. 915, 922; *Pueblo* v. *Otero*, 11 D.P.R. 343; *Pueblo* v. *Milán*, 7 D.P.R. 455; *Pueblo* v. *Soto*, 26 D.P.R. 446; Cf. artículo 257 del Código Penal.[8] Los autos demuestran, sin embargo, que no era ésa la situación en este caso, ya que tanto el acusado como su abogado defensor tenían pleno conocimiento de esa prueba con anterioridad al juicio. Además, la que se ofreció en apoyo de la moción de nuevo juicio sólo tendía a impugnar la aducida durante el juicio. Siendo ello así, no cometió error el tribunal inferior al declarar sin lugar dicha moción.

Finalmente diremos que en los autos hay suficiente prueba para justificar el veredicto rendido por el jurado, y que el mismo no es contrario a la prueba ni a derecho. *Pueblo* v. *Cabrera*, 59 D.P.R. 135.

*Debe confirmarse la sentencia apelada.*

---

"7. Si el acusado descubriere nuevas pruebas que pudieran favorecerle, las cuales, a pesar de haber empleado la mayor actividad razonable, no le hubiera sido posible descubrir y aducir en la vista de la causa. Al solicitarse la celebración de un nuevo juicio basado en la existencia de nuevas pruebas, el acusado deberá presentar en la audiencia que se le conceda para sustentarlas, las declaraciones juradas de los testigos de quienes se espera la producción de las pruebas aludidas, y si necesitare tiempo para producir dichas declaraciones juradas, el tribunal puede diferir el proveer al escrito en que se pida la celebración del nuevo juicio, por el tiempo que, dadas todas las circunstancias, estime razonable."

[8] Artículo 257, supra:
"El delito de violación esencialmente consiste en el ultraje inferido a la persona y sentimientos de la mujer. Cualquiera penetración sexual, por leve que fuere, bastará para consumar el delito."