EL PUEBLO DE PUERTO RICO, peticionario, *v.* RAMÓN MARTÍNEZ ORTIZ, JAVIER CONCEPCIÓN VILLAFAÑE, ROBERTO RAMOS GONZÁLEZ e IRVING NIEVES CARABALLO, acusados y recurridos.

*Número:* CE-93-485          *Resuelto:* 4 de febrero de 1994

*Reina Colón de Rodríguez, Subprocuradora General Interina,* y *Eunice Amaro Garay, Procuradora General Auxiliar,* abogadas de El Pueblo; *Ivette Aponte Nogueras* y *Pedro Hernández Alvarado,* abogados de los recurridos.

## SENTENCIA

El Procurador General de Puerto Rico acudió —vía *certiorari*— ante este Tribunal en revisión de una resolución, de fecha 12 de agosto de 1993, emitida por el Tribunal Superior de Puerto Rico, Sala de Caguas, mediante la cual dicho foro judicial declaró con lugar una solicitud de nuevo juicio —fundamentada la misma en el descubrimiento de nueva prueba— que radicaran los aquí recurridos Martínez Ortiz, Concepción Villafañe, Ramos González y Nieves Caraballo; acusados que habían sido declarados culpables, por el Jurado que intervino en el proceso que se les celebrara, del delito de asesinato en segundo grado y varias infracciones a la Ley de Armas de Puerto Rico.

Mediante Resolución de fecha 10 de septiembre de 1993, y a los fines de evaluar el recurso radicado, le concedimos término a los recurridos para exponer su posición; en auxilio de jurisdicción, ordenamos la paralización de los procedimientos en instancia. La parte recurrida ha

comparecido. El Estado radicó escrito de réplica. Estando en condiciones de resolver el recurso radicado, procedemos a resolver el mismo, sin ulterior trámite, al amparo de las disposiciones de la Regla 50 de nuestro Reglamento, 4 L.P.R.A. Ap. I-A. Procede revocar; veamos por qué.

## I

Conforme surge de los escritos radicados por las partes, el Jurado que intervino en el caso —y que rindió un veredicto de culpabilidad contra los aquí recurridos por los delitos de asesinato en segundo grado e infracción a varios Artículos de la ley de Armas de Puerto Rico— tuvo ante su consideración, de manera principal, el testimonio oral de dos (2) testigos, a saber: el de José Ramos Ríos, quien declaró como testigo de cargo e inculpó a los aquí recurridos, y el de Sergio Merced Espada, quien testificó por la defensa y quien declaró que los recurridos no eran las personas que él vio cometer el asesinato en controversia.

El veredicto de culpabilidad rendido por los señores del Jurado *obviamente* es indicativo de que éstos, ejercitando la facultad que le concede nuestro ordenamiento jurídico de adjudicar credibilidad, le creyeron al testigo de cargo y que rechazaron la declaración del testigo presentado por la defensa —testigo, alegadamente, ocular de los hechos— cuyo testimonio exculpaba totalmente a los recurridos.

Está en controversia ante este Tribunal la solicitud de nuevo juicio radicada por la representación legal de los recurridos, al amparo de las disposiciones de la Regla 188 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, por alegadamente haberse descubierto "nueva prueba, la cual, de haber sido presentada en el juicio, probablemente habría cambiado el veredicto o fallo" emitido; consistente dicha alegada nueva prueba en la declaración de Juan Antonio Fuentes, c/p "Tony Pantera", cuyo testimonio es sustancial-

mente igual al testimonio del testigo de defensa que declaró en el juicio celebrado.([1])

La norma aplicable a esta clase de situación fue correctamente expuesta, y resumida, por este Tribunal en la sentencia que emitiera en *Pueblo v. Morales Rivera*, 115 D.P.R. 107 (1984).([2]) Expresamos en dicho caso, en lo pertinente, que una moción de nuevo juicio fundada en el descubrimiento de nueva prueba *sólo* procede cuando esta última: (1) no se pudo descubrir con razonable diligencia antes del juicio; (2) *no es meramente acumulativa*; (3) *no impugna la prueba aducida durante el juicio*; (4) es creíble, y (5) probablemente produciría un resultado diferente.

De la breve relación de los procedimientos que hiciéramos al comienzo de la presente ponencia, inmediatamente "salta a la vista y hiere la retina", *In re Roldán González*, 113 D.P.R. 238, 242 (1982), que la "nueva prueba" con que cuenta la defensa para fundamentar su solicitud de nuevo juicio *incumple, cuando menos, con el segundo y tercero de los requisitos*. Esto es, la declaración del "nuevo" testigo —Juan Antonio Fuentes c/p "Tony Pantera"— *definitivamente* constituye prueba de carácter acumulativo, por cuanto lo que hace es "corroborar" la declaración del testigo de defensa Sergio Merced Espada, y, en adición, resulta impugnatoria de la declaración del testigo de cargo José Ramos Ríos. Aparte de ello, somos del criterio que el testimonio de "Tony Pantera", probablemente, *no* hubiera cambiado, ni cambiaría, el veredicto de culpabilidad emitido por el Jurado que intervino en el caso.

El error que cometió el tribunal de instancia —al ordenar un nuevo juicio en el presente caso— *es grave y*

---

([1]) La única diferencia entre el testimonio de estos dos (2) testigos es que "Tony Pantera" alega puede identificar, si los ve nuevamente, a las personas que, según él, perpetraron los hechos y que, alega, que el testigo de cargo José Ramos Ríos no estaba al momento de ocurrir los hechos delictivos.

([2]) Dicha Sentencia, aun cuando no establece precedente, resume correctamente la norma aplicable.

*lamentable.* El mismo *desequilibra y / o trastoca totalmente* nuestro sistema de justicia ya que hace *vulnerable* todas las convicciones decretadas a nivel de instancia. No podemos validar dicha errónea actuación.

Revocamos, en consecuencia, la determinación que hiciera el tribunal de instancia de concederle un nuevo juicio a los aquí recurridos. Por los fundamentos antes expresados, *se expide el auto de "certiorari" solicitado y se dicta Sentencia revocatoria de la resolución de fecha 12 de agosto de 1993, devolviéndose el caso al tribunal de instancia para procedimientos ulteriores consistentes con lo aquí resuelto.*

Así lo pronunció, manda el Tribunal y certifica el señor Secretario General. El Juez Presidente Señor Andréu García y el Juez Asociado Señor Negrón García se inhibieron. El Juez Asociado Señor Hernández Denton emitió una opinión disidente, a la cual se unió el Juez Asociado Señor Alonso Alonso.

(*Fdo.*) Francisco R. Agrait Lladó
*Secretario General*

**– O –**

Opinión disidente emitida por el Juez Asociado Señor Hernández Denton, a la cual se une el Juez Asociado Señor Alonso Alonso.

Mediante petición de *certiorari*, acude ante nos el Ministerio Público para solicitar que revoquemos una resolución dictada por el Tribunal Superior, Sala de Caguas, en la cual se declaró con lugar una moción de nuevo juicio presentada por el recurrido. A través de una sentencia breve, la mayoría del Tribunal revoca el dictamen del tribunal de instancia que concedió un nuevo juicio a los recurridos. Disentimos.

I

El 30 de mayo de 1991 fue asesinado a balazos el joven Jesús Ernesto Adorno, mejor conocido por "Memo", por lo que fueron acusados Ramón Martínez Ortiz, Javier Concepción Villafañe, Roberto Ramos González e Irving Nieves Caraballo. Un Jurado los encontró culpables de asesinato en segundo grado y de violaciones a la Ley de Armas de Puerto Rico, pero los absolvió en cuanto a los cargos por conspiración.

Los convictos presentaron posteriormente sendos recursos de apelación ante el Tribunal de Apelaciones de Puerto Rico, Sección Norte. Pendientes estos recursos, el 4 de diciembre de 1993 los aquí recurridos presentaron una moción en la que solicitaron un nuevo juicio ante el Tribunal Superior, Sala de Caguas, que la declaró con lugar el 12 de agosto de 1993.

En sentencia dictada el 30 de agosto de 1993, el Tribunal de Apelaciones ordenó el sobreseimiento de los recursos de apelación debido a la decisión del tribunal sentenciador de celebrar un nuevo juicio. El 10 de septiembre de 1993 el Procurador General acudió ante nos para solicitar la revocación de la resolución que concedió el nuevo juicio, además de la paralización de los procedimientos en instancia. Señaló como único error el siguiente:

Cometió grave error de derecho el Tribunal Superior, Sala de Caguas, al declarar Ha Lugar la Moción de nuevo juicio presentada por los recurridos y fundamentada en el descubrimiento de nueva prueba exculpatoria cuando ésta resultó ser tanto acumulativa como impugnatoria de la prueba desfilada en el juicio. Petición de *certiorari*, pág. 2.

Ese mismo día dictamos una resolución que paralizaba los procedimientos en instancia y concedimos a los recurridos un término de diez (10) días para exponer su posición.

## II

El día del juicio compareció como testigo de cargo el joven José Ramos Ríos, quien declaró lo siguiente. El día del asesinato se encontraba en el Residencial Turabo Heights cuando se encontró con un individuo conocido como "Potoco" y Juan Antonio Fuentes, apodado "Tony Pantera", quien preguntó sobre lo que podía hacer en relación con un dinero que le debían en la Barriada Morales. Las otras personas le aconsejaron que no fuera a ese lugar porque lo podían matar.

Tony entonces fue a casa de su amigo Memo y, junto a Potoco, se quedaron hablando. El testigo de cargo estaba cerca, por lo que vio y escuchó cuando dos (2) individuos se acercaron y le preguntaron a Tony por qué no iba a la Barriada Morales. Memo explicó que Tony no podía ir y, posteriormente, los individuos entregaron lo adeudado a Memo, quien a su vez entregó el dinero a Tony.

Momentos después se escuchó un disparo proveniente de uno (1) de los carros de los individuos. Memo y otro ser humano, conocido como "David", contestaron los disparos. El testigo de cargo subió a su apartamento y desde su balcón observó a los acusados llegar al rato y asesinar a Memo. Aquí termina la versión de José Ramos Ríos.

Como testigo de defensa compareció Sergio Merced Espada (Sergito), quien estuvo presente en el lugar de los hechos y declaró que los acusados no eran las personas, quienes él había visto asesinar a Memo. Añadió que por lo menos tres (3) de los cuatro (4) acusados estaban cerca del lugar tomando refrescos o cervezas.

Sometido el caso, el Jurado los encontró culpables en una votación de nueve (9) a tres (3) por los delitos ya indicados. Los recurridos alegan que después de presentar el recurso de apelación ante el Tribunal de Apelaciones se descubrió nueva prueba exculpatoria que, además, ofrecía

al Ministerio Público las descripciones de los participantes y el móvil del asesinato. Esta prueba consistía en el testimonio de Juan A. Fuentes (Tony), quien presenció todos los hechos ocurridos la noche del asesinato. Por lo anterior, solicitaron la celebración de un nuevo juicio.

El tribunal de instancia celebró una vista en la cual declararon dos (2) testigos. El Lcdo. Pedro Hernández Alvarado testificó sobre el momento cuando la defensa advino en conocimiento de los elementos de la nueva prueba. Por otro lado, Juan A. Fuentes declaró que después del asesinato se fue fuera de Puerto Rico por temor a perder su vida, debido a que los verdaderos culpables estaban libres en la comunidad. Narró todo lo sucedido aquella noche y describió a los verdaderos culpables, alegando que los podía identificar.

El tribunal sentenciador concluyó que procedía celebrar un nuevo juicio por cumplirse los requisitos legales para ello.

## III

Las Reglas 187 a 192 de Procedimiento Criminal regulan la concesión o denegación de una solicitud de nuevo juicio. 34 L.P.R.A. Ap. II. La Regla 188 de Procedimiento Criminal, *supra*, señala, en lo pertinente, lo siguiente:

> El tribunal concederá nuevo juicio por cualquiera de los siguientes fundamentos:
> (a) Que se ha descubierto nueva prueba, la cual, de haber sido presentada en el juicio, probablemente habría cambiado el veredicto o fallo del tribunal, y la que no pudo el acusado con razonable diligencia descubrir y presentar en el juicio. Al solicitar un nuevo juicio por este fundamento, el acusado deberá acompañar a su moción la nueva prueba en forma de declaraciones juradas de los testigos que la aducirán.

Para conceder la solicitud de nuevo juicio por existencia de nueva prueba, el tribunal sentenciador debe quedar convencido de que ésta: (a) no se pudo descubrir con razo-

nable diligencia antes del juicio; (b) no es meramente acumulativa; (c) no es impugnatoria de la prueba aducida durante el juicio; (d) es creíble, y (e) probablemente produciría un resultado diferente. Véanse: *Pueblo v. Morales Rivera*, 115 D.P.R. 107, 115 (1984); *Pueblo v. Beltrán*, 73 D.P.R. 509 (1952); *Pueblo v. Morales*, 66 D.P.R. 10 (1946).

Es menester recordar lo siguiente:

> La moción de nuevo juicio va dirigida a la discreción del tribunal sentenciador y su actuación no será alterada en apelación a menos que se demuestre un claro e inequívoco abuso de discreción .... *Pueblo v. Pardo Toro*, 90 D.P.R. 635, 644 (1964). Véanse: *Pueblo v. Moreno Morales I*, 132 D.P.R. 261 (1992); *Pueblo v. Agosto Castro*, 102 D.P.R. 441 (1974); *Pueblo v. Vázquez Izquierdo*, 96 D.P.R. 154 (1968).

En este caso el tribunal de instancia no abusó de su discreción al conceder el nuevo juicio solicitado. Surge con claridad que el nuevo testigo de la defensa no estuvo disponible para el juicio original, a pesar de las diligencias realizadas. El agente Alberto Vélez declaró en el juicio que durante la investigación criminal se intentó infructuosamente encontrar a Juan A. Fuentes y sólo se sabía que estaba fuera de Puerto Rico. El testigo explicó en su declaración jurada que se escondió por temor a los verdaderos asesinos.

Por otro lado, el testimonio de Juan A. Fuentes provee información no acumulativa al tribunal, pues detalla lo sucedido antes y durante los hechos que culminaron con el asesinato de Memo; ofrece una explicación sobre los motivos para el crimen, y presenta la posibilidad de identificar a los verdaderos asesinos. Tales detalles no podían surgir del testimonio del testigo de la defensa, Sergio Merced Espada, pues éste no estuvo presente durante toda la cadena de eventos ocurridos aquella noche. De lo anterior se desprende, además, que la nueva prueba no es impugnatoria.

Surge de la resolución recurrida que el testimonio de Juan A. Fuentes mereció entera credibilidad al tribunal sentenciador. La naturaleza del testimonio de marras, ade-

más, permite concluir razonablemente que, de haber estado disponible durante el juicio, otro hubiera sido el resultado.([1]) En estas circunstancias, el Tribunal Superior decidió correctamente que procedía un nuevo juicio. De lo contrario, los recurridos no tendrían una oportunidad de traer esta nueva prueba.

Por todo lo anterior, disentimos. Procede la confirmación de la resolución recurrida.

---

([1]) Por otro lado, la Regla 192 de Procedimiento Criminal autoriza a los tribunales a conceder un nuevo juicio cuando después de dictada la sentencia el acusado advenga en conocimiento de nuevos hechos o elementos de prueba que evidencien su inocencia. 34 L.P.R.A. Ap. II. El testimonio que se pretende demostrar en un nuevo juicio evidentemente va dirigido a probar que los acusados no fueron las personas quienes cometieron el asesinato de marras. *Pueblo v. Ruiz Torres*, 127 D.P.R. 612 (1990). Para que una moción al amparo de esta regla proceda, el peticionario debe presentarla en treinta (30) días a partir del momento en que adviene en conocimiento de la nueva prueba. Asumiendo que la defensa en este caso realmente conoció los detalles del nuevo testimonio en noviembre de 1992, procede la moción de nuevo juicio presentada el 4 de diciembre de 1992.