EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ETANISLAO MARTÍNEZ VALENTÍN, acusado y apelante.

*Número:* CR-72-157    *Resuelto:* 17 de septiembre de 1974

R. N. Ponce de Sánchez Rivoleda, Luis Alwin Amorós y Carlos
R. Pagán Rodríguez, abogados del apelante; Myriam Naveira

*de Rodón, Procuradora General,* y *Adolfo J. Vilá, Procurador General Auxiliar,* abogados de El Pueblo.

PER CURIAM: Mientras descansaba con su familia en su hogar de Cabo Rojo, a las 8:00 P.M. del 10 de septiembre de 1970, el Sargento de la Policía Víctor M. Rodríguez Ramírez sintió caer una piedra sobre la casa. Cuando salió al balcón fue muerto por un disparo hecho a corta distancia con un rifle o carabina de alto calibre, penetrando el proyectil junto al ombligo e interceptando la arteria iliaca derecha. Juzgado el apelante por estos hechos, un jurado de Mayagüez produjo veredicto de culpabilidad por los delitos de asesinato en primer grado e infracción al Art. 8 de la Ley de Armas, y el juez lo halló también culpable en el caso menor por infracción al Art. 6 de la Ley de Armas.

Examinaremos los señalamientos de error en el orden correlativo en que los formula el apelante.

▇▇▇ (1A) Que la conducta del fiscal durante el juicio impidió que el acusado tuviera un juicio ajustado al debido proceso de ley.

La exagerada puntillosidad de la defensa sobre cuestiones secundarias pierde de vista que un juicio por asesinato no es una tenida apologética y que el fiscal tiene facultad y deber de presentar el caso del Pueblo con energía y diligencia sin lastimar el debido proceso de ley. La lectura de la transcripción de la evidencia nos convence de que los derechos del apelante no sufrieron lesión por actuaciones del fiscal y que el juez de instancia mantuvo un ejemplar dominio de los procedimientos garantizando un juicio imparcial. La alegación de que se vulneró el debido proceso de ley que exige la Constitución está totalmente desprovista de fundamento y en las circunstancias de este caso resulta ser *tábula in naufragio.* No sancionamos los sarcasmos y comentarios extemporáneos del fiscal interrumpiendo el juicio que debió reservar, si fueren propios, para los turnos de informe. La contienda judicial no debe degenerar en coloquios mortificantes entre

el fiscal y la defensa ni aun cuando por su puerilidad y nimiedad en nada lastimen el curso legal del proceso.

■ La reserva por el fiscal de la comunicación verbal a él trasmitida por el testigo Fas Fagundo en la cual éste contradijo la fecha en que estuvo con el acusado en Cabo Rojo no fue en todo caso un error perjudicial toda vez que dicho testigo no varió la hora (2:30 P.M.) en que estuvo con el apelante por lo que ni en su declaración jurada ni en la manifestación verbal sostuvo la coartada excluyente de la participación del apelante en el atentado realizado a las 8:00 P.M. Además, el fiscal sólo venía obligado a entregar a la defensa la declaración jurada de este testigo renunciado, lo que hizo. No tenía que servirle un resumen aparte de cuanto hubiera dicho no consignado en la declaración.

■ La alegada obtención por el fiscal de la declaración de Francisco Rodríguez Luciano, alias Chico, a cambio de promesas de favorecerlo en los casos que sobre éste pendían por narcóticos, no pasó de ser una insinuación totalmente desprovista de prueba. Aun cuando el apelante la hubiese substanciado, el error no sería de grado revisable toda vez que el veredicto de culpabilidad está sostenido por amplia prueba aparte del testimonio del citado Chico.

■ (B) El señalamiento de error imputando al juez sentenciador conducta que privó al acusado de un juicio imparcial es frívolo. El propio apelante reconoce, a la pág. 100 (final) de su alegato, que el juez no incurrió en los excesos de intervención y olvido de su ecuanimidad censurados en *Pueblo* v. *Aletriz*, 85 D.P.R. 646 (1962); *Pueblo* v. *Nieves Alvelo*, 89 D.P.R. 47 (1963). El juez se limitó a mantener el orden y la dignidad del proceso y sus manifestaciones fueron necesarias para impedir la confusión y las desviaciones de la cuestión central por el estilo particularmente combativo y puntilloso tanto del fiscal como de la defensa. Es deber del

juez proteger la inteligente percepción por el jurado sin que sea confundido ni distraído de los legítimos elementos de prueba relevantes a su final determinación de la inocencia o culpabilidad del acusado. Todo cuanto hizo el juez fue impedir que la contienda entre la defensa y el fiscal degenerara en estéril diatriba. (1)

■ (2) Denegación por el juez de la moción sobre anulación del juicio (*mistrial*) basada en que el fiscal no le informó a la defensa al entregarle la declaración jurada del testigo Fas Fagundo que antes de prestarla éste le había dicho al fiscal que fue miércoles y no jueves (2) el día en que había visto al acusado en Cabo Rojo.

Fas Fagundo fue un testigo del Estado renunciado por el fiscal quien al terminar su prueba entregó a la defensa la única declaración jurada que de él tenía. La defensa estaba en el perfecto derecho de entrevistar a Fas antes de sentarlo a declarar y siendo la coartada la única defensa del acusado era evidentemente vital escudriñar el recuerdo del testigo sobre dicho particular de fecha y descubrir la contradicción que salió a relucir en el contrainterrogatorio por el fiscal. La sorpresa, si alguna se produjo, se debió a una aparente superficialidad en el examen a que se sometió al testigo antes de utilizarlo. Aun así la declaración jurada del referido testigo estuvo bajo la consideración del jurado que tuvo oportunidad de pasar sobre la credibilidad de una y otra versión.

---

(1) El juez dictó una orden prohibiendo la intervención de abogados no participantes en consultas y asesoramiento de los defensores en Sala durante el juicio salvaguardando ese derecho de los abogados del apelante para consultas fuera de estrados. Al ausentarse brevemente el abogado defensor Amorós, surgió el siguiente incidente:

"Hon. Fiscal: Yo quisiera saber qué hacía el compañero Amorós fuera del estrado, porque hay instrucciones respecto a que ningún abogado que no esté participando en el proceso, en realidad no haga comentarios, Señor Juez.

Lcdo. Amorós: Estaba yo haciendo una necesidad fisiológica."

(2) El atentado tuvo lugar el jueves 10 de septiembre.

■ (3) Admisión en evidencia sin adecuada identificación de la bala y la ropa del acusado.

La prueba fue bastante para trazar un hilo de identidad entre la bala extraída del cuerpo del occiso y la examinada por el laboratorio en Washington sin que del récord surja la más leve sospecha de manejo o intervención torpe con dicha pieza de evidencia. El señalamiento no tiene consecuencia porque la evidencia restante plenamente justifica la convicción del apelante, aun prescindiendo del ofrecimiento del proyectil mortífero. La admisión de la ropa del apelante satisface todas las normas de evidencia.

(4) Admisión de prueba sobre diseño y uso de la bala.

No abusó el tribunal de su discreción al admitir la declaración del perito en balística del Negociado Federal de Investigaciones (F.B.I.) sobre las características y poder letal de la bala que causó la muerte, dentro del cuadro general de evidencia circunstancial revelado al jurado. ([3])

(5) Reiteración de falta de debido proceso en el juicio.

■ Bajo este señalamiento se reproducen cuestiones ya revisadas al resolver la apelación y se ataca la suficiencia de prueba, alegación que el propio apelante disuelve al aceptar que fue voluntaria la confesión del delito por el acusado a un testigo preso en la cárcel de Aguadilla. (Alegato del apelante, pág. 122.)

. Hubo prueba creída por el jurado de que el jueves 10 de

---

([3]) "HON. FISCAL:

P ¿Cuando usted dice que interesó quiere decir que lo pasó de un lado a otro ese hueso?

R Sí, señor.

P ¿Ese hueso sacro es duro o blando?

R Es duro.

P ¿Bastante duro?

R De consistencia fuerte.

P ¿Ese hueso la bala lo pasó?

R Sí, señor.

P ¿Cuando la bala pasa ese hueso qué órganos había traspasado?

R Había interesado las asas intestinales, el intestino, y la arteria iliaca primativa derecha."

septiembre de 1970 el apelante dijo a un amigo suyo que esa noche habría un atentado contra el Sargento Víctor Rodríguez, que si quería ganar $350 por situarse cerca de la casa de éste a las 8:00 P.M. y avisar el paso de algún policía; que el invitado no se unió a la empresa; que similar invitación fue rechazada por el testigo c/p Chico quien dudó de que el apelante pudiera pagarle; que el Sargento fue muerto esa noche a las 8:00 P.M. en su propia casa por un disparo de un arma de fuego potente; que aquel testigo al día siguiente volvió a ver al apelante quien le informó: "jodí al tipo"; que ese mismo viernes el acusado dio un paquete de ropa a guardar al dueño de una barra cafetería, ropa identificada como la que vistió el apelante el día que murió el sargento; que estando detenido en sumaria en la Cárcel de Distrito de Aguadilla, el acusado confesó con detalles a otro confinado que un tal Fen tiró una piedra y cuando el sargento salió el apelante le disparó con un *shot gun*. El disparo se hizo a corta distancia (unos 3 pies) y aparecen residuos que el perito químico llamó "nitrados" tanto en la ropa del apelante como en la del occiso y que la pólvora es una de las substancias que producen dichos nitrados; y que junto al balcón de la casa del occiso la policía ocupó una piedra cubierta con cartón y amarrada con una soga.

(6)  Denegación de un nuevo juicio.

Para obtener un nuevo juicio el acusado alegó descubrimiento de nueva prueba; que el veredicto es contrario a derecho; que el fiscal incurrió en conducta impropia y que el juez erró al resolver cuestiones de derecho. Estos planteamientos han sido ya rechazados al examinar los precedentes apuntamientos de error y huelga pasar nuevamente sobre los mismos. El juicio celebrado al acusado fue justo, ninguno de sus derechos fundamentales fue vulnerado y no tiene derecho a un segundo día en corte. "Sin embargo, no se requiere un nuevo juicio cada vez que un repaso de los archivos de fiscalía después del juicio descubre evidencia que si bien pudo ser de utilidad a la defensa con toda probabilidad no hubiera cam-

biado el veredicto." *Giglio* v. *United States* (1972) 405 U.S. 150.

(7) Procede reducir de 1 año a 6 meses la pena impuesta por infracción al Art. 6 de la Ley de Armas a tenor de lo dispuesto en las Leyes Núms. 8 y 9 aprobadas el 7 de julio de 1971, 34 L.P.R.A. sec. 1712.

*Se confirmarán las sentencias dictadas por el Tribunal Superior, Sala de Mayagüez, en el caso de asesinato en primer grado y Art. 8 de la Ley de Armas; y en el caso por infracción del Art. 6 de la Ley de Armas se reducirá la pena de 1 año a 6 meses de cárcel, y así modificada la sentencia también se confirmará.*