EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Peticionario<br><br>v.<br><br>William J. Rodríguez<br><br>Recurrido | Certiorari<br><br>2015 TSPR 139<br><br>193 DPR ____ |

Número del Caso: CC-2014-137

Fecha: 19 de octubre de 2015

Tribunal de Apelaciones:

>        Región Judicial de San Juan

Oficina de la Procuradora General:

>        Lcda. Margarita Mercado Echegaray
>        Procuradora General
>
>        Lcda. Tanaira Padilla Rodríguez
>        Subprocuradora General
>
>        Lcda. Daphne M. Cordero Guilloty
>        Procuradora General Auxiliar

Abogado de la Parte Recurrida:

>        Lcdo. Eduardo Otero Ortiz
>        Lcdo. Juan Albino González

Materia: Procedimiento Criminal – Moción de Nuevo Juicio: Solicitud bajo la Regla 188(a) – Naturaleza impugnatoria de la prueba descubierta; necesidad de evaluar la totalidad de la prueba al considerar la moción de nuevo juicio.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

     Peticionario                  **CC-2014-137**

                                               *Certiorari*

        v.

William J. Rodríguez

       Recurrido

Opinión del Tribunal emitida por la Jueza Presidenta SEÑORA FIOL MATTA

En San Juan, Puerto Rico, a 19 de octubre de 2015.

La controversia que presenta este caso nos permite analizar la Regla 188(a) de Procedimiento Criminal, sobre solicitudes de nuevo juicio basadas en el descubrimiento de prueba nueva y presentadas antes de que se dicte la sentencia, para expresarnos, específicamente, sobre el requisito relacionado a prueba de naturaleza impugnatoria. Abordaremos también cómo se deben evaluar estas solicitudes de nuevo juicio, particularmente la necesidad de tomar en cuenta, no solo la prueba alegadamente nueva, sino la totalidad de la prueba presentada durante el juicio.

I

El 10 de marzo de 2012, la señora L.G. estudiante universitaria en Estados Unidos, llegó a Puerto Rico para colaborar en un proyecto de investigación junto a otros estudiantes de su universidad. El grupo habría de residir por varias semanas en el Condominio Ashford Imperial en el Condado, donde la señora L.G. ocupaba un apartamento en el piso 18 con una compañera de estudios.

Por hechos ocurridos en la madrugada del 14 de abril de 2012, el Ministerio Público presentó una denuncia por el delito de agresión sexual contra el señor William J. Rodríguez, un guardia de seguridad del Condominio Ashford Imperial.[1] Según la denuncia, durante su turno de trabajo, el señor Rodríguez violó a la señora L.G. cuando ésta regresaba a su apartamento. Además, se alegó como circunstancia agravante que los hechos fueron cometidos empleando fuerza física, violencia e intimidación.

El juicio contra el acusado comenzó el 1 de octubre de 2012. Testificaron la señora L.G., el doctor que la examinó luego de la agresión sexual y los agentes de la Policía de Puerto Rico que investigaron el crimen. El tribunal recibió como evidencia las pruebas médicas realizadas a la víctima y el informe médico, así como el informe del Instituto de Ciencias Forenses, el

---

[1] Art. 142(c) del Código Penal, 33 LPRA sec. 4470.

certificado de análisis forense de ADN y los expedientes médicos de la perjudicada. Además, recibió el informe preparado por la agente de delitos sexuales que llevó a cabo la investigación, las fotografías de la escena, un video del vestíbulo del Condominio Ashford Imperial —que proyectaba el área donde la víctima y el acusado se encontraron la noche de los hechos— y un video de la escalera para acceder a la azotea del condominio, donde eventualmente ocurrieron los hechos.

Durante su turno para contrainterrogar a la víctima, la defensa del imputado impugnó la credibilidad de su testimonio. Le preguntó si ella o su familia habían contratado a un bufete de abogados para presentar una demanda por los daños sufridos como consecuencia de la agresión sexual cometida en su contra.[2] La fiscalía objetó esta línea de preguntas, pero luego de discutirlo con los representantes de cada parte el juez permitió que la defensa continuara. La testigo negó tener la intención de presentar una demanda civil por daños.

En su turno para recontrainterrogar, la defensa volvió a preguntar si la víctima había contratado un abogado o abogada para instar una reclamación civil por los hechos delictivos y si fue acompañada por un

_____

[2] Específicamente, el abogado de defensa preguntó: "[o]iga, testigo, mire a ver si lo cierto es que usted, su familia, incluso vienen aquí, contrató los servicios de los abogados del bufete de Salvador Casellas para radicar una demanda". Apéndice del recurso de *certiorari*, pág. 272.

representante legal a la vista preliminar. La víctima contestó todas estas preguntas en la negativa.

Antes que comenzara el juicio, la defensa del señor Rodríguez ya había indagado sobre el interés económico de la señora L.G. en dos ocasiones. Particularmente, la defensa había solicitado que se tomara conocimiento judicial de unas anotaciones que realizó el juez que presidió la vista preliminar. Según alegó la defensa, el juez indicó en las notas que la señora L.G. compareció a la vista acompañada por el licenciado Casellas, quien había sido su compañero de trabajo. Se desprende de las notas que el juez informó a los presentes que conocía al licenciado Casellas, quien comparecía como amigo de la familia de la víctima. Mediante resolución dictada el 24 de octubre de 2012, el tribunal se negó a tomar conocimiento judicial de estas anotaciones. La defensa entonces solicitó que el tribunal ordenara que el juez que presidió la vista preliminar compareciera como testigo de la defensa, solicitud que también fue denegada, el 3 de diciembre de 2012.

Concluido el desfile de la prueba, el jurado emitió un veredicto unánime el 11 de diciembre de 2012 y encontró que el señor Rodríguez era culpable del delito de agresión sexual.

Así las cosas, el 16 de abril de 2013, antes del acto de lectura de sentencia, el señor Rodríguez solicitó

que el Tribunal de Primera Instancia le concediera un nuevo juicio, pues entendía que contaba con prueba nueva para impugnar a la testigo principal del caso, la señora L.G. Esta nueva evidencia consiste en que el 18 de marzo de 2013 la víctima y sus padres habían presentado una demanda sobre daños y perjuicios en el Tribunal federal de los Estados Unidos para el Distrito de Puerto Rico en contra del Condominio Ashford Imperial, lugar donde ocurrieron los hechos, y su aseguradora. Reclamaron $4.7 millones como compensación. El señor Rodríguez sostuvo que esta prueba nueva confirmaba la teoría de la defensa de que la víctima tenía un motivo pecuniario para mentir e imputarle falsamente la comisión del delito al señor Rodríguez. Específicamente, recordó al tribunal que durante el contrainterrogatorio la víctima fue cuestionada sobre su intención de instar una acción civil por los daños y perjuicios sufridos a raíz de la violación, a lo cual contestó en la negativa en más de una ocasión. Según el señor Rodríguez, esta nueva prueba hubiera creado en la mente del jurado duda razonable, resultando en un veredicto a su favor.

El Ministerio Público se opuso a la solicitud. Adujo que ninguno de los fundamentos expresados por el señor Rodríguez cumplía los criterios establecidos en la Regla 188 de Procedimiento Criminal para la concesión de un

nuevo juicio.[3] Explicó que esta controversia sobre el testimonio de la señora L.G. ya había sido ventilada en el juicio, donde fue adjudicada y creída por el jurado, por lo que el valor exculpatorio de la supuesta prueba nueva era altamente especulativo.

Tras examinar ambas posiciones y celebrar una vista argumentativa, el Tribunal de Primera Instancia declaró con lugar la solicitud de nuevo juicio. Concluyó que si el jurado hubiera conocido que la víctima tenía intención de demandar se hubiera podido afectar adversamente su credibilidad como testigo principal del caso, pues tendría una motivación o interés especial en el resultado del caso criminal. Por eso, esta prueba nueva podría llevar al jurado a emitir un veredicto distinto. Específicamente, el tribunal expresó lo siguiente:

> No hay duda de que el resultado del proceso criminal era fundamental para que la acción civil instada por la testigo y sus padres tuviera posibilidad de prosperar. La prueba de la agresión sexual dependía del testimonio de la víctima más que de la evidencia física o científica. Por tanto, existen razones para pensar que el testimonio de la víctima se pudo haber afectado por los intereses económicos que tenía en la demanda civil. Este planteamiento cobra mayor vigencia al observar que, en la demanda civil no se demanda al convicto, quien presumiblemente no cuenta con capacidad económica alguna para responder por la millonaria suma reclamada, sino contra aquellas partes que tenían algún tipo de relación con el convicto y que cuentan con capacidad económica para pagar.
> A la luz de los hechos del presente caso, nos parece que de haberse contado con esa nueva

---

[3] 34 LPRA Ap. II, R. 188.

evidencia, ello pudiera haber dado el espacio que exige el debido proceso de ley para que la defensa tratara de establecer una motivación particular de la víctima en el resultado de un caso criminal. Dicha parte debe poder tratar de establecer ese hecho principal ante el juzgador. El no haberlo podido hacer macula el proceso y socava su confiabilidad y su resultado. Más aun, que de los hechos también surge que la testigo principal [L.G.], estudiante universitaria, omitió revelar el hecho de su interés pecuniario en el caso, lo cual puede representar una motivación especial y parcialidad.[4]

El Ministerio Público acudió al Tribunal de Apelaciones mediante un recurso de *certiorari*. Ese foro denegó expedir el recurso tras concluir que el foro primario no había abusado de su discreción.[5] Fundamentó su análisis con el siguiente razonamiento:

el aspecto neurálgico que presenta este caso y que pesa en nuestro ánimo para avalar la determinación recurrida, es que la testigo principal de cargo, la perjudicada, omitió declarar durante el juicio criminal que tenía un interés económico en el caso, así como, que estuvo acompañada por un abogado de la práctica civil durante alguna etapa del proceso. Esto, aun cuando ello le fue específicamente y directamente cuestionado. La realidad ha sido que contrario a lo declarado bajo juramento ante el tribunal y el jurado en el juicio

---

[4] Apéndice del recurso de *certiorari*, pág. 263.

[5] El Juez Roberto Rodríguez Casillas emitió un voto disidente en el que hizo constar que expediría y revocaría la Resolución de instancia. El 24 de enero de 2014, el foro intermedio denegó una solicitud de reconsideración.

contra el señor Rodríguez, la perjudicada, en efecto, presentó una acción civil por daños y perjuicios ante el Tribunal Federal, Corte de Distrito de Puerto Rico, por los hechos que dieron lugar a la acusación y convicción del señor Rodríguez. Además, está siendo representada por el mismo Lcdo. Casellas que la acompañó durante la vista preliminar.

El TPI al considerar la solicitud de nuevo juicio concluyó que esta nueva información debe ser considerada por el jurado y ser objeto de confrontación por la defensa del señor Rodríguez. En vista de que la perjudicada al parecer mintió, ante una línea de interrogatorio respecto a ello, el foro recurrido, correctamente a nuestro juicio, resolvió que el resultado del juicio se ve socavado, así como el debido proceso de ley.[6]

El 24 de febrero de 2014, la Procuradora General solicitó nuestra intervención mediante petición de *certiorari*. Pendiente su consideración, la Procuradora General también solicitó que se paralizaran los procedimientos en el Tribunal de Primera Instancia y, en particular, la celebración de una vista pautada para el siguiente día. Examinada su moción y la petición de *certiorari*, paralizamos los procedimientos y expedimos el recurso.

II

Nuestra Constitución le garantiza a toda persona acusada de delito el derecho a un juicio justo e imparcial en el que se le brinden todas las salvaguardas de un debido proceso de ley.[7] Cuando se lesionan esos

---

[6] Apéndice del recurso de *certiorari*, pág. 414.

[7] Art. II, secs. 7 y 11, Const. ELA, LPRA Tomo 1.

derechos fundamentales durante el proceso criminal se quebrantan valores esenciales de nuestra sociedad y se atenta directamente contra la libertad individual. Por eso, hemos reiterado que hay derecho a un nuevo juicio cuando en el trámite de una causa penal se ha lacerado el debido proceso de ley al ocultarse o no proveerse prueba que incide sobre la inocencia o culpabilidad del acusado. De igual forma, procede ordenar un nuevo juicio cuando surge prueba nueva que menoscaba la confianza en lo resuelto y no pudo presentarse en el juicio.[8] Este derecho a nuevo juicio le da primacía a la verdad sobre aquellas bondades que puedan resultar del principio de finalidad del procedimiento criminal.[9]

Nuestro ordenamiento permite que un tribunal conceda un nuevo juicio ya sea, a instancia propia, con el consentimiento del acusado o a petición de éste.[10]

---

[8] _Pueblo v. Velázquez Colón_, 174 DPR 304, 326 (2008); _Pueblo v. Hernández Santana_, 138 DPR 577 (1995); _Pueblo v. Morales Rivera_, 115 DPR 107 (1984).

[9] _Pueblo v. Díaz Morales_, 170 DPR 749, 763 (2007)(Sentencia) (Opinión de conformidad de la Jueza Asociada señora Fiol Matta, a la cual se une el Juez Asociado señor Fuster Berlingeri).

[10] 34 LPRA Ap. II, R. 187.

Específicamente, las Reglas 188 y 192 de Procedimiento Criminal disponen que el tribunal puede conceder un nuevo juicio tras el descubrimiento de prueba nueva.[11] Esta norma es producto del desarrollo jurisprudencial conocido como el "Berry Rule".[12]

Antes de que entraran en vigor nuestras Reglas de Procedimiento Criminal, el artículo 301 del Código de Enjuiciamiento Criminal de Puerto Rico establecía que el nuevo juicio consistía "en volver a oír la causa en el mismo tribunal pero ante otro jurado, después de pronunciado el veredicto".[13] Aquella disposición no reconocía el derecho a un nuevo juicio cuando el primero se había ventilado ante un tribunal de derecho y tampoco reconocía la posibilidad de que el tribunal, con el consentimiento del acusado, ordenara el juicio nuevo a instancia propia. El artículo 303 reconocía el derecho a un nuevo juicio cuando se hubiera descubierto "nueva prueba que no pudo el acusado descubrir y presentar en el

---

[11] 34 LPRA Ap. II. Pueblo v. Marcano Parrilla, 168 DPR 721, 729 (2006)(en reconsideración) (en adelante Pueblo v. Marcano Parrilla (II)).

[12] Actualmente, en la jurisdicción federal las solicitudes de nuevo juicio están codificadas en la Regla 33, de las Reglas de Procedimiento Criminal, 18 U.S.C.A. 6 LaFave, Israel, King and Kerr, Criminal Procedure, West 3rd Ed., sec. 24.11(d) (2007).

[13] Reglas 187 a 192, Departamento de Justicia, Seminario sobre las propuestas Reglas de Procedimiento Criminal, San Juan, s. Ed. 1960, págs. 241-246.

juicio, a pesar de su actividad razonable para lograrlo…".[14]

Las Reglas de Procedimiento Criminal bifurcaron la concesión de un nuevo juicio en dos reglas distintas, la Regla 188 y la 192. La primera, en unión a la Regla 189, regula la concesión de ese remedio antes de que se dicte sentencia y la segunda después de dictarse la misma. La Regla 188 de Procedimiento Criminal, además de modificar el texto del artículo 303 del Código de Enjuiciamiento Criminal, añadió varios fundamentos para la concesión de un nuevo juicio. El más importante fue el reconocimiento expreso de la discreción del tribunal para conceder un nuevo juicio por cualquier causa no incluida expresamente en el texto de la regla, siempre que esa causa no fuera atribuible al acusado y que el derecho de éste a un juicio justo e imparcial se viera afectado.[15] No hay duda que con la adopción de las Reglas de Procedimiento

---

[14] *Íd.*, pág. 242. Desde aquel entonces, habíamos requerido que se cumpliera con varios requisitos desarrollados y adoptados por la jurisprudencia. Entre ellos, que la nueva prueba no fuera meramente acumulativa, y no impugnara la prueba presentada en el juicio. A estos requisitos se añadió que "(1) la nueva evidencia debe ser creíble… y (2) probablemente produciría un resultado diferente". Pueblo v. Morales, 66 DPR 10, 20-21 (1946) (citas internas suprimidas).

[15] 34 LPRA Ap. II, R. 188(f). Este reconocimiento fue necesario ya que en Pueblo v. Vega, 69 DPR 406 (1948) y en Pueblo v. Fraticelli, 70 DPR 308 (1949) se había determinado que el texto del Artículo 303 contenía un listado taxativo de fundamentos para un nuevo juicio.´

Criminal se plasmó la tendencia de liberalizar y expandir el derecho a un nuevo juicio. Los nuevos fundamentos para la concesión de un nuevo juicio introducidos en la Regla 188 ampliaron "sensiblemente el marco de acción y aún de discreción del tribunal para mejor salvaguardar los intereses de todo acusado".[16]

Esa intención quedó evidenciada al incorporarse la Regla 192, para la concesión de un nuevo juicio en etapas posteriores a la sentencia. Al redactar esa regla el Comité de Procedimiento Criminal de la Conferencia Judicial recurrió al texto del Artículo 954 (4) de la Ley de Enjuiciamiento Criminal española, pero lo hizo con la intención de hacer viable en nuestro ordenamiento un recurso paralelo al *coram nobis* del ordenamiento angloamericano.[17] Por eso es que tenemos en nuestro ordenamiento dos reglas sobre la concesión de un nuevo juicio, y a ello responde la diferencia en sus lenguajes.[18]

---

[16] Reglas 187 a 192, Departamento de Justicia, Seminario sobre las propuestas Reglas de Procedimiento Criminal, *supra*, pág. 243.

[17] Pueblo v. Marcano Parrilla (II), *supra*, págs. 730-731.

[18] La Regla 192 dispone que el tribunal podrá "a solicitud del acusado, conceder un nuevo juicio cuando después de dictada la sentencia sobreviniere el conocimiento de *nuevos hechos o de nuevos elementos de prueba de tal naturaleza que evidencien la inocencia del condenado"*. 34 LPRA Ap. II.

En la actualidad, la Regla 188 dispone lo siguiente:

> [e]l tribunal concederá un nuevo juicio por cualquiera de los siguientes fundamentos:
>
> > (a) Que se ha descubierto nueva prueba, la cual, de haber sido presentada en el juicio, probablemente habría cambiado el veredicto o fallo del tribunal, y la que no pudo el acusado con razonable diligencia descubrir y presentar en el juicio. Al solicitar nuevo juicio por este fundamento, el acusado deberá acompañar a su moción la nueva prueba en forma de declaraciones juradas de los testigos que la aducirán.
> >
> > .   .   .   .   .   .   .   .
> >
> > (f) El tribunal, además, concederá un nuevo juicio cuando, debido a cualquier otra causa de la cual no fuere responsable el acusado, éste no hubiere tenido un juicio justo e imparcial.[19]

La Regla 188(a), puede separarse en tres elementos principales. Primero, la prueba descubierta, por su naturaleza, debe ser suficiente como para demostrar que su admisión probablemente cambiaría el fallo o veredicto. Segundo, debe tratarse de prueba que no se pudo obtener antes, a pesar de la diligencia razonable de la defensa. Ello requiere, por último, que se acredite al tribunal cuál es la prueba descubierta y la diligencia desplegada para obtenerla.

El primero de estos elementos exige que la prueba nueva lleve al juzgador a creer que si esta se hubiese presentado durante el juicio el resultado probablemente

---

[19] 34 LPRA Ap. II, R. 188.

hubiese sido distinto, recordando que, "no cualquier prueba conduce a la celebración de un nuevo juicio, sino aquella que sea lo suficientemente sólida".[20] Es decir, el tribunal debe determinar si la prueba nueva, considerada junto a la prueba presentada durante el juicio, es suficiente para hacer probable la duda razonable que impide un fallo o veredicto de culpabilidad. En Pueblo v. Marcano Parrilla (II) hicimos hincapié en la obligación de no evaluar la prueba nueva de manera aislada y en que se debe tomar en consideración la solidez de la evidencia ya presentada en el juicio "porque dicha evidencia ya condujo a un veredicto o fallo condenatorio".[21]

En Pueblo v. Martínez Valentín denegamos una solicitud de nuevo juicio por considerar, entre otros factores, que no era probable que la prueba cambiara el fallo o veredicto.[22] Allí citamos lo resuelto en el caso federal Giglio v. United States: "[s]in embargo, no se requiere un nuevo juicio cada vez que un repaso de los archivos de fiscalía después del juicio descubre

---

[20] Pueblo v. Marcano Parrilla (II), *supra*, pág. 736.

[21] *Íd.*, págs. 736-737 citando Wright and Miller, Federal Practice and Procedure: Civil, 3d sec. 557 (2004). Los tribunales federales también reconocen que al evaluar la probabilidad de un resultado distinto se debe evaluar la prueba nueva a la luz de la totalidad del récord y no de manera aislada. Específicamente "[t]he strength of the evidence presented at the trial is an important consideration". Wright and Welling, Federal Practice and Procedure, *supra*, pág. 463.

[22] Pueblo v. Martínez Valentín, 102 DPR 492, 498-499 (1974).

evidencia que si bien pudo ser de utilidad a la defensa con toda probabilidad no hubiera cambiado el veredicto".[23] En Pueblo v. Vázquez Izquierdo, analizamos la interacción entre el requisito de probabilidad de cambio y los parámetros de la deferencia debida por los foros apelativos hacia las determinaciones del foro de instancia.[24] En ese contexto, reiteramos que la concesión del nuevo juicio descansa en la sana discreción del tribunal sentenciador y los foros apelativos no deben intervenir salvo un claro e inequívoco abuso de discreción.[25]

Los elementos segundo y tercero, necesarios según el texto de la Regla 188(a), atienden el aspecto de diligencia en el trámite de la defensa y la necesidad de demostrarle al tribunal que la evidencia merece ser considerada como prueba nueva. En términos generales, ni el acusado ni su representante legal pueden haber conocido la supuesta prueba nueva previamente. En este sentido, la prueba es nueva en la medida en que no se pudo descubrir antes mediante un esfuerzo de diligencia

---

[23] 405 U.S. 150, 154 (1972).

[24] 96 DPR 154 (1968).

[25] *Íd.* pág. 157. Pueblo v. Marcano Parrilla (II), *supra*, pág. 737; Pueblo v. Morales Rivera, *supra*, pág. 110; Pueblo v. Pardo Toro, 90 DPR 635 (1964); Pueblo v. Aponte, 77 DPR 917, 921 (1954).

razonable.[26] Para demostrar que eso es así, se tiene que especificar en qué consiste la prueba nueva.[27] También hemos exigido se demuestre la diligencia desplegada por la defensa.[28]

Además de los elementos recogidos en el texto de la Regla 188(a), una solicitud de nuevo juicio basada en el descubrimiento de prueba nueva debe cumplir con requisitos desarrollados jurisprudencialmente. Estos son: que la prueba sea creíble y pertinente y que no sea meramente acumulativa ni prueba de impugnación.[29]

Estas exigencias de la jurisprudencia también deben cumplirse cuando se solicita un nuevo juicio al amparo de la Regla 192. Sin embargo, hemos explicado que la solicitud de nuevo juicio bajo la Regla 192 es de naturaleza excepcional ya que puede afectar la finalidad y firmeza de una sentencia que se presume correcta.[30] Por

---

[26] Pueblo v. Arroyo Núñez, 99 DPR 842, 850 (1971); Pueblo v. Pardo Toro, *supra*.

[27] Pueblo v. Rivero, Lugo y Almodóvar, 121 DPR 454 (1988).

[28] Pueblo v. Maysonet, 103 DPR 102 (1974); Pueblo v. Villalongo Torres, 102 DPR 574 (1974); Pueblo v. Tribunal Superior, 100 DPR 700 (1972).

[29] Pueblo v. Velázquez Colón, *supra*; Pueblo v. Marcano Parrilla (II), *supra*, pág. 738; Pueblo v. Chévere Heredia, 139 DPR 1 (1995); Pueblo v. Martínez Ortiz, 135 DPR 100 (1994); Pueblo v. Torres Rivera, 129 DPR 331 (1991); Pueblo v. Rivero, Lugo y Almodóvar, *supra,* pág. 476; Pueblo v. Morales Rivera, *supra*, pág. 110; Pueblo v. Beltrán, 73 DPR 509 (1952); Pueblo v. Ortiz, 68 DPR 681, 683 (1948); Pueblo v. Morales, *supra*.
[30] Pueblo v. Marcano Parrilla (II), *supra*; Pueblo v. Velázquez Colón, *supra,* pág. 327. En Pueblo v. Díaz

eso hemos resuelto que si bien el fin último de esa Regla es liberalizar o ampliar el derecho a un nuevo juicio, "la nueva prueba debe demostrar que **es más probable** que el convicto sea inocente a que sea culpable."[31]

Los próximos dos requisitos, que la prueba sea creíble y que no sea meramente acumulativa, van dirigidos a evaluar la probabilidad de que con ella se obtenga un resultado distinto. Es decir, si la prueba nueva es meramente acumulativa, probablemente no cambiará el resultado del juicio, pues ya se habría presentado evidencia de naturaleza y valor probatorio similar.[32]

---

Morales, *supra*, se aclaró, mediante sentencia, que la solicitud de nuevo juicio bajo la Regla 192 no tiene que esperar a que la sentencia advenga final y firme.

[31] Pueblo v. Marcano Parrilla (II), *supra*, pág. 740 (énfasis suplido). Este Tribunal ha expresado que la Regla 192 requiere un grado de prueba mayor al que se exige para conceder un nuevo juicio bajo la 188(a). *Íd.*, pág. 739. Sin embargo, ambas requieren un análisis de probabilidad. Pueblo v. Velázquez Colón, *supra*, pág. 327. Véase, E. L. Chiesa Aponte y A. Febres Jorge, Procedimiento Criminal, 77 Rev. Jur. U.P.R. 657, 671-673 (2008). E. L. Chiesa Aponte y E. León Pérez, Derecho Procesal Penal, 76 Rev. Jur. U.P.R. 617, 634 (2007).

[32] Pueblo v. González de Demora, 92 DPR 75, 77 (1965); Pueblo v. Beltrán, *supra*, pág. 519; Pueblo v. Morales, *supra*. El Artículo 378 del Código de Enjuiciamiento Civil, ya derogado, definía la evidencia acumulativa como aquella que "es la adicional del mismo carácter tendiente al mismo fin". Véase E. L. Chiesa Aponte, Derecho Procesal Penal de Puerto Rico y Estados Unidos, Ed. Forum, V. III, 1995, pág. 447 n. 23.

Tampoco se debe conceder un nuevo juicio cuando la prueba supuestamente nueva es increíble.[33] Ahora bien, debido a su naturaleza y propósito, al considerar estos factores el tribunal debe evaluarlos cuidadosamente a la luz de la prueba ya presentada.

La exigencia de que la petición no se fundamente en prueba de impugnación merece un análisis sosegado y algunas aclaraciones. En primer lugar, el solo hecho de que la prueba pueda catalogarse como prueba de impugnación no conlleva que la solicitud de nuevo juicio sea rechazada automáticamente. La prueba de impugnación puede ser de carácter exculpatorio, protegida celosamente por el debido proceso de ley.[34] No podemos olvidar que nuestra Constitución garantiza a toda persona el derecho a que el Estado le revele evidencia exculpatoria como parte de su derecho a un juicio justo.[35] Además, como el Estado tiene el peso de demostrar su caso más allá de

---

[33] En Pueblo v. Morales Acosta, 66 DPR 10 (1946), se rechazó una solicitud de nuevo juicio porque la declaración que se pretendía traer como prueba nueva no era creíble. Sin embargo, ese no fue el único requisito que se analizó para denegar la solicitud. También se determinó que la alegada prueba nueva no era suficiente porque probablemente no produciría un resultado distinto en el caso. Íd., págs. 21-22.

[34] Giglio v. United States, 406 U.S. 150 (1972); Pueblo v. Velázquez Colón, supra.

[35] Pueblo v. Vélez Bonilla, 189 DPR 705 (2013); Pueblo v. Arzuaga, 160 DPR 520, 539 (2003); Pueblo v. Rodríguez Sánchez, 109 DPR 243 (1979); Pueblo v. Hernández García, 102 DPR 506 (1974). Véase, Brady v. Maryland, 373 U.S. 83 (1963).

duda razonable, la prueba para impugnar la presentación del caso del Ministerio Público es sumamente importante. Por eso, hemos expresado en reiteradas ocasiones que la prueba para impugnar la credibilidad de un testigo principal de cargo se ajusta a los estándares formulados por nuestra jurisprudencia y la federal para ser considerada como prueba exculpatoria necesaria bajo el debido proceso de ley.[36]

Algunos estudiosos del procedimiento criminal puertorriqueño han señalado la necesidad de aclarar el requisito jurisprudencial relacionado a la prueba de naturaleza impugnatoria. El profesor Chiesa Aponte comparte esta preocupación.[37] Explica que impugnar la prueba del Ministerio Público conlleva "desacreditar la evidencia mediante la cual se probó la culpabilidad del acusado más allá de duda razonable. Tal impugnación

---

[36] Véase Pueblo v. Hernández García, *supra*; Pueblo v. Delgado López, 106 DPR 441 (1977); Giglio v. United States, *supra*; United States v. Bagley, 473 U.S. 667 (1985); Napue v. Illinois, 360 U.S. 264, 269 (1959); Brady v. Maryland, *supra*.

[37] El profesor Chiesa Aponte concluye que "[e]n cualquier caso no debe repetirse, sin ulterior análisis, que no procede la concesión de un nuevo juicio cuando la alegada nueva prueba sólo impugna la prueba aducida durante el juicio. Esto requiere ulterior análisis". E. Chiesa Aponte, Derecho Procesal Penal de Puerto Rico y Estados Unidos, Ed. Forum, V. III, 1995, pág. 448.

probablemente produciría la duda razonable que obligaría al juzgador a absolver al acusado".[38]

En la esfera federal se reconoce que el criterio de prueba impugnatoria no puede aplicarse de manera inflexible.[39] En ocasiones, los tribunales federales abandonan los rigores de este requisito cuando la prueba de impugnación es lo suficientemente importante y de circunstancias especiales como para incidir en el resultado del juicio en contra del acusado.[40] Más aún, esos tribunales han reconocido situaciones que quedan fuera del límite de los requisitos de la regla general. Por ejemplo, han reconocido que el acusado tiene derecho a un nuevo juicio cuando el Ministerio Público utiliza prueba falsa relacionada a la credibilidad de un testigo, aunque no vaya dirigida a asuntos sustantivos.[41]

Tomando en cuenta todas estas consideraciones, concluimos que el mero hecho de que se quiera someter prueba nueva para impugnar el caso del Ministerio Público no es fundamento suficiente para denegar una solicitud de

---

[38] *Íd.*

[39] "Ordinarily newly discovered evidence that merely goes to impeach the credibility of a prosecution witness is not sufficient to justify a new trial. This is the usual but not invariable rule." (Citas internas suprimidas). 3 Wright and Welling, Federal Practice and Procedure, West, pág. 469 (2011).

[40] *Íd.,* págs. 470-471.

[41] *Íd.,* págs. 472-487.

nuevo juicio. La razón, según hemos explicado, es que la prueba impugnatoria puede ser suficiente, por sí sola, para crear duda razonable en la mente y ánimo del juzgador.[42] A esos fines hemos declarado que "el debido proceso de ley constitucional exij[e] que el acusado tenga la oportunidad de examinar, con tiempo suficiente, no solo la prueba que obra en su contra —en vías de impugnarla—, sino aquella que obra a su favor, sea sustantiva o para impugnación."[43]

Hasta este punto hemos considerado los requisitos que nuestras Reglas de Procedimiento Criminal y la normativa jurisprudencial han dispuesto para las solicitudes de nuevo juicio "ordinarias".[44] No obstante, al igual que en la esfera federal, en Puerto Rico hemos

---

[42] Incluso, en cuanto al derecho al careo y su relación con el debido proceso de ley hemos dejado claro que "el Art. II, Sec. 11, de nuestra Constitución garantiza el derecho del acusado a 'carearse con los testigos de cargo'. Para que tal confrontación o careo tenga concreción y sentido, el debido proceso exige que se pongan al alcance del acusado los medios de prueba para impugnar los testigos, atacar su credibilidad y todo recurso análogo encaminado a erradicar la falsedad del juicio y evitar el desvío de la justicia. Un careo sin estos instrumentos, cuando sean legítimamente asequibles, frustra el propósito del precepto constitucional". Pueblo v. Rodríguez Sánchez, *supra*, pág. 249.

[43] Pueblo v. Vélez Bonilla, *supra*, pág. 708; United States v. Bagley*, supra*; Giglio v. United States*, supra*.

[44] Pueblo v. Velázquez Colón, *supra*, págs. 327-328. E. L. Chiesa Aponte, Derecho Penal, 78 Rev. Jur. U.P.R. 291, 324 (2008).

reconocido el derecho a un nuevo juicio bajo circunstancias extraordinarias.[45] Esto sucede cuando el Estado suprime o deja de revelar prueba exculpatoria violando las garantías del debido proceso de ley. Recientemente, en Pueblo v. Vélez Bonilla, *supra*,[46] reconocimos "que cuando el Estado falla en descubrir evidencia que resulta material y exculpatoria, el debido proceso de ley exige inimpugnablemente la celebración de un nuevo juicio".[47] En estos casos, la solicitud de nuevo juicio no se evalúa a la luz de los criterios estatutarios ni jurisprudenciales porque su necesidad emana del debido proceso de ley, del derecho a obtener evidencia favorable y del derecho a enfrentar la prueba.[48] A esos efectos reiteramos que "los derechos lacerados con la omisión del Estado están protegidos por

---

[45] "Es decir, cuando el Estado oculta prueba exculpatoria, la moción de nuevo juicio que procede no puede ser evaluada a la luz de los requisitos estatutarios y jurisprudenciales aplicables a las mociones 'ordinarias' de nuevo juicio." Pueblo v. Velázquez Colón, *supra*, pág. 329. Véase E. Chiesa Aponte, Derecho Penal, 78 Rev. Jur. U.P.R. 291, 324 (2008). "La moción extraordinaria de nuevo juicio es la fundada en que no se le reveló oportunamente a la defensa evidencia exculpatoria, en violación a la obligación del Ministerio Fiscal de revelar a la defensa prueba exculpatoria, por imperativo del debido proceso de ley." *Íd.*

[46] 189 DPR 705 (2013).

[47] *Íd.* pág. 708.

[48] Pueblo v. Velázquez Colón, *supra*, pág. 329. Pueblo v. Arzuaga, *supra*.

consideraciones mucho más abarcadoras que las Reglas de Procedimiento Criminal".[49]

Esta categoría particular de solicitudes de nuevo juicio se apoya en el derecho a preparar una defensa adecuada para enfrentar los rigores de un procedimiento criminal, derecho que se nutre, a su vez, del debido proceso de ley.[50] Igual fuente garantiza el derecho a confrontar a los testigos de cargo.[51] De ahí que el derecho a obtener evidencia favorable sea esencial para la defensa y que el Ministerio Público tenga la obligación de revelar toda evidencia exculpatoria que le garantice al acusado un procedimiento justo.[52] Esta obligación trasciende las normas estatutarias sobre el

---

[49] *Íd.* (citas internas suprimidas).

[50] Pueblo v. Santa-Cruz, 149 DPR 223, 231 (1999).

[51] Const. E.L.A., Art. II, Secs. 7 y 11, 1 LPRA. Pueblo v. Olmeda Zayas, 176 DPR 7, 14 (2009); Pueblo v. Velázquez Colón, *supra*, págs. 326-348.

[52] Pueblo v. Guzmán, 161 D.P.R. 137, 147 (2004); Pueblo v. Arzuaga, *supra*; Pueblo v. Arocho Soto, 137 DPR 762, 766 (1994). Hemos aclarado que aunque no se trata de un derecho absoluto, "nuestro sistema de justicia criminal le ha reconocido el derecho al acusado de obtener evidencia que pueda favorecerle." Soc. Asist. Leg. v. Ciencias Forenses, 179 DPR 849, 857 (2010). Específicamente, hemos determinado que "evidencia exculpatoria no es necesariamente aquella que de por sí sola es capaz de producir la absolución del acusado. No se requiere tal potencial. Es más bien toda evidencia que llanamente pudiera favorecer al acusado, sin consideraciones en torno a su materialidad o confiabilidad. Su confiabilidad —cuán creíble es— y su materialidad —cuánto aporta en favor del acusado— son un asunto que corresponde evaluar al foro de instancia". Pueblo v. Vélez Bonilla, *supra*, pág. 719.

descubrimiento de prueba y es tan amplia que, si la situación lo amerita, no toma en consideración la etapa en que se encuentran los procedimientos ni requiere solicitud previa del acusado.[53]

Hemos tenido ocasión anteriormente de evaluar solicitudes extraordinarias de nuevo juicio basadas en que el Ministerio Público ha suprimido prueba de impugnación. En Pueblo v. Torres Rivera, *supra*,[54] a la vez que recalcamos la importancia de la prueba de impugnación y el deber del Ministerio Público de revelarla a la defensa del acusado, rechazamos la solicitud de nuevo juicio, mediante sentencia, porque la prueba de impugnación que el Estado falló en revelar no era suficiente para afectar el resultado del juicio. A esos fines, explicamos que el descubrimiento de prueba

---

[53] En Pueblo v. Arzuaga, *supra,* luego de estudiar la jurisprudencia federal correspondiente, concluimos que "el Ministerio Fiscal tiene el deber de revelar cualquier indicio de falso testimonio y de descubrir evidencia exculpatoria cuando tal falsedad o carácter exculpatorio es, o debió ser, conocida por éste […]. Ello, naturalmente, sin necesidad de una previa solicitud por parte de la defensa y sin importar si las Reglas de Procedimiento Criminal proveen o no para tal descubrimiento en la etapa específica de los procedimientos en que se encuentren." (Citas internas suprimidas). *Íd.,* págs. 534-535.

[54] En aquella ocasión se tomó en consideración la diferencia entre el testigo principal de cargo (coautor de los hechos a quien se le ofreció un acuerdo para que testificará contra el coacusado) y otros testigos que no juegan un papel tan importante en el caso.

impugnatoria suprimida u omitida por el Estado no requiere que se autorice automáticamente la celebración de un nuevo juicio.[55]

Posteriormente, en Pueblo v. Velázquez Colón, *supra,* recalcamos que la prueba de impugnación está inserta en el derecho a un juicio justo bajo las salvaguardas del debido proceso de ley. Particularmente, determinamos que

> [p]ara examinar un reclamo de nueva prueba de carácter impugnatorio de la prueba producida en el juicio … debemos aplicar los criterios esbozados en *Giglio v. United States*, supra, y en *United States v. Bagley*, supra. Ello, ya que, aun cuando la alegada nueva prueba va dirigida a impugnar la prueba de cargo aducida en el juicio, implica el derecho del acusado a un juicio justo en donde se le garantice el debido proceso de ley frente a la conducta del representante del Estado.[56]

En estos casos se atendieron reclamos de nuevo juicio bajo el fundamento de que el Estado no reveló oportunamente evidencia exculpatoria, en violación al debido proceso de ley, incumpliendo con ello su obligación constitucional de revelar prueba pertinente

---

[55] Pueblo v. Chévere Heredia, *supra*, pág. 24. En Pueblo v. Torres Rivera, *supra*, el Ministerio Público falló en revelar oportunamente la prueba relativa al acuerdo entre un testigo principal de cargo y el Estado. Explicamos que "no toda evidencia para impugnar la credibilidad de un testigo principal de cargo —no revelada al acusado durante el juicio y descubierta por éste con posterioridad a él— requiere automáticamente la concesión de un nuevo juicio. Se requiere determinar que tal evidencia es *relevante*, esto es, que su supresión socava la confianza en el resultado del juicio." (Énfasis en el original). Pueblo v. Torres Rivera, *supra*, pág. 351.

[56] Pueblo v. Velázquez Colón, *supra*, pág. 328, citando a Pueblo v. Torres Rivera, *supra*, pág. 354.

sobre la inocencia o culpabilidad del acusado. Para esas situaciones adoptamos un estándar diferente y más relajado que el que se utiliza para evaluar mociones de nuevo juicio en situaciones ordinarias de descubrimiento de prueba nueva.[57] En la jurisdicción federal también ha quedado claro que los requisitos jurisprudenciales de la llamada "Berry Rule" no aplican a solicitudes de nuevo juicio basadas en evidencia exculpatoria que no fue revelada por el Estado según la norma establecida en el caso Brady v. Maryland, *supra*, y el desarrollo doctrinal posterior.[58]

III

El señor Rodríguez fundamentó su solicitud de nuevo

---

[57] "[S]i en ausencia de la prueba pertinente en cuanto a inocencia o culpabilidad que fue suprimida, el peticionario gozó de un juicio justo, es decir, de un juicio cuyo resultado es digno de confianza, o si en cambio, de haber sido presentada, la prueba omitida hubiese arrojado una luz diferente en el juicio al punto de socavar la confianza en el resultado. Este es el estándar aplicable para determinar si hay una probabilidad razonable de un veredicto diferente que amerite un nuevo juicio cuando las actuaciones del Estado ocasionan que el acusado no haya tenido acceso a la evidencia durante la etapa del juicio original." Pueblo v. Velázquez Colón, *supra*, pág. 351.

[58] "Another situation where it is clear that the Berry rule does not apply is where the government failed to disclosed evidence favorable to the defense." Wright and Welling, *supra,* pág. 487. El escrutinio del caso Brady, *supra*, se ha resumido de la siguiente manera: "(1) the evidence at issue is material and favorable to the defendant; (2) the evidence was suppressed by the government, intentionally or not; and (3) the defendant was prejudiced to the point that there is a reasonable probability that the evidence suppressed, had it been disclosed, would have led to a different result for the defendant." *Íd.* pág. 488.

juicio en el descubrimiento de prueba nueva: la demanda en daños que la señora L.G., víctima y testigo principal del caso, presentó ante el Tribunal de Distrito federal. Se trata de prueba que, según argumenta, impugna fatalmente la credibilidad de esta testigo que había declarado que ni ella ni su familia tenían interés en presentar una demanda civil basada en los hechos alegados en contra del señor Rodríguez en el juicio criminal.

La solicitud aduce, en primer lugar, que esta prueba no estaba disponible durante el juicio y no era posible obtenerla aun con el mayor grado de diligencia. También, que no es prueba acumulativa ya que no se pudo presentar prueba de interés económico o de motivo durante el juicio. En tercer lugar, expone que se trata de prueba de impugnación en extremo relevante pues su supresión socavaría la confianza en el resultado del juicio. Finalmente, el señor Rodríguez alega que la prueba es creíble y que de haberse presentado durante el juicio se hubiera obtenido, con toda probabilidad, un veredicto exculpatorio. Todo esto llevó al Tribunal de Primera Instancia a concluir que el debido proceso de ley exigía concederle un nuevo juicio al señor Rodríguez, para que la defensa pudiera desarrollar la teoría de que la

víctima y testigo principal del caso tenía un interés económico en acusarlo falsamente.

Nuestro análisis debe comenzar por reconocer que el presente caso no debe evaluarse bajo los criterios extraordinarios aplicables a las solicitudes de nuevo juicio basadas en la omisión o supresión de prueba exculpatoria que el Estado debió haber revelado al acusado oportunamente, según su obligación constitucional. Por lo tanto, procedemos a evaluar la solicitud del señor Rodríguez bajo la normativa de las Reglas de Procedimiento Criminal y la jurisprudencia antes discutida. En primer lugar, los tribunales inferiores actuaron correctamente al no rechazar la solicitud automáticamente por tratarse de prueba de impugnación puesto que esta, según alega el señor Rodríguez, impugnaría la credibilidad de la testigo principal y víctima en el procedimiento criminal en su contra. Sin embargo, los foros de primera instancia y apelativo erraron al no evaluar esa prueba impugnatoria a la luz de la prueba que fue presentada durante el juicio. Sólo así podrían determinar si era probable que la admisión de la prueba nueva hubiera resultado en un veredicto distinto.

En su orden, el foro primario razonó que

de haberse conocido durante el juicio [que se presentó la demanda en daños], pudiera haber afectado adversamente la credibilidad de la testigo principal del caso, por contar con una motivación e interés especial en el resultado del caso criminal. Ello **pudiera** haber alterado

la determinación del jurado en su veredicto.[59]

El foro primario omitió evaluar el peso de la evidencia nueva para determinar si esta **probablemente** produciría un resultado distinto. El análisis contemplado por las Reglas procesales y la jurisprudencia requiere que el tribunal confronte el peso y valor de la nueva prueba propuesta contra toda la evidencia desfilada durante el juicio. Eso no ocurrió en este caso. El tribunal se limitó a concluir que la evidencia nueva "**pudiera** haber alterado la determinación del jurado" y no sopesó la prueba presentada durante el juicio. En estas circunstancias, el Tribunal de Primera Instancia abusó de su discreción al concederle al señor Rodríguez un nuevo juicio. Del mismo modo, el Tribunal de Apelaciones se equivocó al no corregir al Tribunal de Primera Instancia.

Según se desprende de la transcripción de los procedimientos, la defensa tuvo amplia oportunidad durante el juicio de contrainterrogar a la señora L.G. e impugnar su alegado interés económico en el resultado del pleito criminal contra el señor Rodríguez:

> P. Lo cierto es, que tanto usted como también sus padres, contrataron los servicios del bufete de Salvador Casellas, hijo. Incluso, aquí viene uno de los abogados y los acompaña a ustedes para hacer una reclamación civil en este caso a las partes envueltas. La universidad, la compañía

---

[59] Apéndice del recurso de *certiorari*, pág. 263 (énfasis suplido).

de seguros, el mismo Willy (el convicto). Compañía de seguros, William (el convicto), la universidad, el condominio.

R. No.

P. ¿Ni que se va a radicar?

R. No.[60]

Concluido el turno de la defensa, en su turno de redirecto el Ministerio Público le preguntó lo siguiente a la señora L.G.:

P. El abogado del acusado le preguntó a usted si usted o sus padres habían contratado a abogados para hacer alguna reclamación civil al acusado, al condominio, a la universidad. Usted contestó que no. Mi pregunta es, por qué razón o qué la movió usted a denunciar estos hechos.

R. **Para hacer valer mis derechos de… o sea, fui violada. No quiero tener que vivir por esto toda mi vida, por eso es que estoy aquí.**[61]

Un repaso de la evidencia desfilada demuestra lo difícil que sería concluir que la prueba supuestamente nueva presentada en apoyo a la solicitud de nuevo juicio probablemente arrojaría un resultado diferente a la determinación de culpabilidad a la que llegó el jurado. Como reseñamos anteriormente, la prueba desfilada no se limitó al testimonio de la señora L.G., sino que incluyó

---

[60] Apéndice del recurso de *certiorari*, pág. 277.

[61] Apéndice del recurso de *certiorari*, pág. 278 (énfasis suplido).

el testimonio del doctor que la examinó luego de los hechos y el de los agentes a cargo de la investigación, los informes preparados por la agente de delitos sexuales, el médico y el Instituto de Ciencias Forenses, el análisis forense de ADN, las fotografías de la escena y los videos del vestíbulo y del área de acceso a la azotea del condominio. Incluso, durante el juicio, la defensa contrainterrogó a la testigo, en más de una ocasión, sobre si tenía intención de presentar una acción civil en daños por los mismos hechos criminales del juicio contra el señor Rodríguez. La señora L.G. contestó en la negativa. Tras evaluar toda la evidencia y escuchar el testimonio y subsiguiente impugnación de la señora L.G., el jurado halló, unánimemente, que el señor Rodríguez era culpable.

La solicitud del señor Rodríguez incumple un requisito esencial para la concesión de un nuevo juicio en circunstancias ordinarias. Y es que no podemos concluir, a la luz de toda la evidencia desfilada durante el juicio, que la presentación de la demanda en daños y perjuicios probablemente cambiaría el veredicto unánime del jurado. La señora L.G. presentó su demanda tres meses después de ese veredicto. El que se haya presentado la demanda en daños y perjuicios tres meses después del juicio no es suficiente para concluir, como hicieron los foros inferiores, que ella estaba mintiendo cuando

testificó sobre los hechos imputados al acusado.[62] Resulta preocupante que ambos foros llegaran a esa conclusión sin considerar el resto de la prueba en la cual el jurado basó su decisión, la cual, como explicamos, incluyó la teoría de la defensa sobre la mendacidad y parcialidad de la testigo por razones económicas. El evento posterior sometido como prueba de impugnación en este caso no es suficiente para catalogar como falsa la aseveración de la señora L.G. en cuanto a su intención, en aquel momento, de no presentar una acción en daños y perjuicios.

Hemos explicado que "la concesión de un nuevo juicio salvaguarda los intereses de la verdad y la justicia, y dependerá de los hechos y de las circunstancias particulares de cada caso, en virtud de su naturaleza excepcional".[63] En nuestra función adjudicativa no podemos abstraernos de la realidad ni ignorar la totalidad de los hechos que dieron paso a la controversia que se atiende. Por eso, debemos considerar la naturaleza particular de la prueba nueva ante nuestra consideración: luego de concluido el juicio, la víctima de la violación presentó una demanda en daños y perjuicios basada en los mismos hechos por los cuales se juzgó al señor Rodríguez. Esa situación es muy diferente a aquellas en las que hemos concedido un nuevo juicio porque se ocultó información

---

[62] Apéndice del recurso de *certiorari*, pág. 415.

[63] Pueblo v. Marcano Parrilla (II), *supra*, pág. 737.

que serviría para impugnar a la testigo principal del caso. En esos otros casos, el Ministerio Público participó del acto de ocultar u omitir tales hechos al no revelar que le había concedido al testigo principal del caso algún tipo de inmunidad o beneficio a cambio de su testimonio. Esa omisión del Estado laceró la confianza en el resultado del caso y maculó la certeza del proceso penal. Sin embargo, en el caso ante nuestra consideración el Estado es un tercero ajeno a la decisión que tomó la señora L.G. de presentar la demanda civil.

Más importante aún, no podemos equiparar el interés en el resultado del caso de un testigo que recibió un beneficio o inmunidad a cambio de su testimonio al interés de la víctima en el resultado de la acción penal. Si bien en la acción penal el Pueblo comparece en representación de la sociedad — pues la conducta delictiva lacera los entendidos básicos de la comunidad — no podemos llegar al extremo de hacer invisible el daño particular que sufre la víctima. La señora L.G. tiene derecho a reclamar el resarcimiento por los daños que en su momento pueda demostrar a satisfacción del tribunal. No por ello puede reducirse su interés en el caso penal a un mero interés económico, como concluyó el Tribunal de Primera Instancia y confirmó el Tribunal de Apelaciones. El resarcimiento económico, si alguno, que eventualmente pueda obtener la señora L.G. y sus allegados es un tipo

de reparación por los daños que han sufrido y no prueba que su testimonio fuera un negocio para obtener ganancias. La conclusión contraria impondría un obstáculo al ejercicio de derechos que el ordenamiento concede a las personas que sean víctimas de alguna conducta delictiva. Confirmar a los foros inferiores llevaría al absurdo de reconocer el derecho automático a un nuevo juicio cada vez que una víctima decida ejercer su derecho a ser indemnizada luego de un fallo o veredicto de culpabilidad o de que se dicte una sentencia.

Llamamos nuevamente la atención a la necesidad de evitar entrar en clasificaciones que tiendan a reconocer menos credibilidad a las víctimas de agresiones sexuales.[64] Al presentar su demanda, la señora L.G. ejerció su derecho a reclamar por los daños que alega haber sufrido.[65] Evaluada la totalidad de la prueba desfilada en el juicio y creída por el jurado, nos resulta inconcebible penalizar la credibilidad de la víctima por ejercer ese derecho. Concluimos que los foros inferiores erraron al evaluar la prueba de la presentación de la demanda en daños y perjuicios sin

---

[64] Com. de la Mujer v. Srio. de Justicia, 109 DPR 715, 732 (1980).

[65] Hemos reconocido que las víctimas de agresión sexual sufren daños particulares, que incluso atentan contra su dignidad como personas, que no pueden ser equiparados con las angustias provocadas por otro tipo de casos de daños y perjuicios. De demostrarse ante un tribunal, estos daños merecen ser compensados. Elba A.B.M. v. U.P.R., 121 DPR 294, 321 (1990).

tomar en cuenta la totalidad de la prueba presentada en el juicio.

IV

Por los fundamentos antes expuestos, *se revoca la Resolución recurrida, se reinstala el veredicto del jurado y se ordena al Tribunal de Primera Instancia dictar la Sentencia correspondiente.*

Liana Fiol Matta
Jueza Presidenta

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


El Pueblo de Puerto Rico

     Peticionario                    **CC-2014-137**

                                           *Certiorari*

        v.

William J. Rodríguez

     Recurrido




SENTENCIA


En San Juan, Puerto Rico, a 19 de octubre de 2015.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente Sentencia, se revoca la Resolución recurrida, se reinstala el veredicto del jurado y se ordena al Tribunal de Primera Instancia dictar la Sentencia correspondiente.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal.


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo